**In the Matter of the Application for the DISCIPLINE OF Timothy W. JORISSEN, an Attorney at Law of the State of Minnesota.**

No. C3–79–50661.

Supreme Court of Minnesota.

Aug. 8, 1986.

---

William J. Wernz, Betty M. Shaw, Asst. Director, St. Paul, for appellant.

Timothy W. Jorissen, Arden Hills, for respondent.

---

PER CURIAM.

After a lengthy disciplinary history, respondent Timothy Jorissen was suspended from the practice of law in October 1981. In April 1984 the Director of Minnesota Lawyers Professional Responsibility petitioned the court urging respondent's disbarment. Respondent answered and petitioned for reinstatement. Following a hearing on the Director's original petition urging disbarment, and a supplemental petition containing additional allegations of misconduct, and on respondent's petition for reinstatement, a referee appointed by the court recommended disbarment. We accept the referee's recommendation and order disbarment.

Respondent was admitted to the practice of law in 1974. In May 1979, the director of Lawyers Professional Responsibility issued a complaint alleging respondent neglected two real estate matters and an automobile accident case. That same month respondent entered into a stipulation for private probation. The stipulation provided for a two-year stay of disciplinary proceedings; respondent's supervision by another attorney; and a reprimand upon successful completion of the probation period.

In October 1979, however, the director issued a second complaint and filed a petition for disciplinary action against respondent before this court. The petition alleged: neglect and misrepresentations to a client in a collection matter; breach of the earlier stipulation by failing to provide requested medical reports; misrepresentations to his probation supervisor concerning a matter under investigation; and failure to cooperate with the director's investigation. Respondent admitted most of the allegations in the director's petition and in December 1979, we publicly censured respondent for his procrastination and neglect of legal matters. We then placed respondent on indefinite probation. The terms and conditions of his probation included: (1) limiting of his practice to completing existing files and not accepting any additional new work; (2) practicing under the supervision of two attorneys; and (3) not returning to general practice without petitioning the Lawyers Professional Responsibility Board, agreeing to the board's terms and securing the approval of this court.

Less than a year later, in December 1980, the director issued respondent a warning for neglect of a client's civil claim and failure to cooperate with his supervising attorney in the investigation of a complaint. Respondent accepted this warning and stipulated to these facts. He also stipulated that he had repeatedly failed to cooperate with the director's office and had continued to neglect client matters during the probation.

In August 1981, the director and respondent filed a stipulation with this court admitting additional unprofessional conduct in violation of this court's 1979 probation order. Respondent admitted he did not limit his practice as ordered, and appeared in court on behalf of two separate clients. In October 1981, we suspended respondent indefinitely from the practice of law in Minnesota giving him permission to apply for reinstatement after September 1, 1982. Violations of our suspension order form the basis of this disciplinary action. Following his suspension, respondent was employed as a law clerk with the firm in which he had been previously practicing. He later contracted his services out.

The director bases his petition on respondent's actions in six matters. The first involves his appearance in juvenile court on behalf of a client on April 25, 1983. The juvenile appeared at an arraignment hearing and entered a denial, assisted by respondent. Respondent introduced himself as "Timothy Jorissen of [naming the firm he was clerking for]." He informed the court that another lawyer would be the attorney of record. Respondent never informed the court that he was a law clerk, not an attorney, and the presiding judge

testified that he was led to believe that respondent was an attorney.

The second incident arose at a pre-trial hearing before the same judge on June 27, 1983. Respondent appeared with a client charged with driving while intoxicated. The court inquired on the record whether the client was appearing with the attorney of record to which respondent answered, "Timothy W. Jorissen, J–O–R–I–S–S–E–N." Respondent then stated for the record that the client was waiving his right to a Rasmussen hearing on the results of a blood alcohol test. Both the judge and county attorney believed respondent to be an attorney.

The third alleged incident of misconduct appeared at the trial of the DWI client. Respondent appeared as co-counsel with the attorney of record. Although respondent never claimed to be an attorney, he never informed the court nor the county attorney that he was appearing in a paralegal capacity. Both the court and county attorney testified they were led to believe that respondent was an attorney by his participation in an in-chambers discussion and by his sitting at the counsel table during trial.

The fourth incident involved an appearance by respondent at a hearing before the Workers' Compensation Court of Appeals on July 20, 1983. Respondent announced to the court that a party to the dispute would not be submitting a brief nor making an argument and was content to stand on the record. When the court released its decision, it noted that respondent appeared on behalf of the party. Respondent did nothing to correct the error and now admits he used poor judgment.

The fifth incident involves respondent's participation in a domestic abuse matter. On July 27, 1983, respondent appeared before a county court on behalf of a client who was not present. Respondent never told the court he was not an attorney in spite of the court's numerous references to him as "counsel." Respondent then stipulated to a restraining order. The trial judge testified that had he known that respondent was not an attorney, he would not have permitted the stipulation in the client's absence.

The final incident involved respondent's participation in the dissolution of the parties involved in the domestic abuse matter. Respondent telephoned opposing counsel and said he was representing the husband. He did not tell counsel that he was a law clerk. On July 6, 1984, he met with counsel and the parties to discuss a stipulation and advised the husband on the terms of the stipulation. Counsel made clear to respondent her belief that respondent was an attorney. A hearing was set before the trial court who had learned of respondent's suspension. The court refused to accept the stipulation and ordered respondent to pay opposing counsel $300 in attorney fees. There is no evidence that respondent has paid those fees.

Following respondent's disciplinary hearing, the referee concluded that respondent had impliedly misrepresented himself as a licensed attorney to the court and members of the bar in violation of Disciplinary Rules 1–102(A)(4), (5) and (6), Minn. Code Prof. Resp., that respondent's actions amount to the unauthorized practice of law, Rule 3–101(B), Minn.Code Prof.Resp., and that respondent had violated this court's October 5, 1981, suspension order. The referee, based upon the cumulative effect of respondent's violations, recommends disbarment.

Disciplinary Rule 3–101(B), Minn.Code Prof.Resp., provides:

A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

Similarly, Minn.Stat. § 481.02 (1984) prohibits any person "except members of the bar of Minnesota admitted and licensed to practice as attorneys at law," from appearing in any court as an attorney or counselor at law on behalf of any other person, from holding oneself out as qualified to give legal advice, preparing legal documents, and from giving out legal advice or counseling. It is clear that if respondent

did engage in the practice of law, that practice was unauthorized and a violation of both these rules. The question, therefore, is whether respondent's actions amounted to the practice of law. We hold that they did.

■■■ Respondent argues that he was not practicing law; rather, he was acting as a paralegal or law clerk. The line drawn between the work of a law clerk and an attorney is a fine one. The composition and preparation of legal documents by one not authorized to practice law for approval and signature by an attorney does not ordinarily constitute the unauthorized practice of law. *State ex rel. Oregon State Bar v. Lenske,* 284 Or. 23, 31, 584 P.2d 759, 763 (1978). As long as the legal assistant's work is of a preparatory nature only, such as legal research and investigation, such that the work merges with the work of a supervising attorney, it is not considered to be the practice of law. *See State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116, 1124 (1974); *In re Easler,* 275 S.C. 400, 401, 272 S.E.2d 32, 32–33 (1980). Where, however, the non-lawyer acts in a representative capacity in protecting, enforcing, or defending the legal rights of another, and advises and counsels that person in connection with those rights, the non-lawyer steps over that line. *See Fitchette v. Taylor,* 191 Minn. 582, 584, 254 N.W. 910, 911 (1934); *see also Denver Bar Association v. Public Utilities Commission,* 154 Colo. 273, 279, 391 P.2d 467, 471 (1964).

■■ Where the individual charged with unauthorized practice has had legal training, his activities are subject to even closer scrutiny. For instance, in *State ex rel. Nebraska State Bar Association v. Frank,* 219 Neb. 271, 363 N.W.2d 139, (1985), a suspended attorney aided his uncle in legal proceedings to determine the inheritance tax on his grandfather's estate. The Nebraska Supreme Court disbarred the attorney reasoning:

> We believe it is one thing for a lay person to engage in the unauthorized practice of law and thereby subject himself or herself to criminal penalties, and quite another situation where one who has been bound by oath to comply with the Code of Professional Responsibility nevertheless completely ignores the order of this court suspending him from practice.

*Id.* at 274, 363 N.W.2d at 141. Similarly, the North Dakota Supreme Court, in *In re Christianson,* 215 N.W.2d 920 (N.D.1974), stated:

> A suspended lawyer is not the same as a layman. The public knows that he has a legal education, that he has engaged in the practice of law, and that his work and his opinions are presumably more valuable on that account. We cannot accept the argument that a disbarred or suspended lawyer may engage in all activities which nonlawyers also perform. * * * A suspended lawyer may engage in some [legal-related] activities if he is otherwise qualified to do so, but not if his qualifications come from having been a lawyer. * * * When professional expertise enters into the activity, and when the activity is one which is customarily performed by lawyers, then such activity is forbidden to a suspended attorney, even though under some conditions members of other professions may sometimes be allowed to perform the same acts.

*Id.* at 925–26.

■■■ In this case, respondent appeared on behalf of a juvenile in a criminal proceeding, appeared at a pretrial hearing and waived his client's right to a Rasmussen hearing, made an appearance on behalf of a client before an administrative tribunal, stipulated to a restraining order on behalf of a client not present in court, and negotiated and counseled a client in working out a marital dissolution stipulation. We hold that these actions constitute the practice of law and that they were unauthorized under Minn.Stat. § 481.02 (1984) and DR 3-101(B), Minn.Code Prof.Resp. since respondent carried them out while under suspension as ordered by this court. We agree with the reasoning of the Nebraska and North Dakota Supreme Courts and find respondent's actions particularly egregious

since he has been trained in the ethical standards observed by the legal profession yet openly and willfully violated them.

Disciplinary Rule 1–102(A), Minn.Code Prof.Resp., provides:

(A) A lawyer shall not:

\* \* \* \* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Respondent never told anyone that he was an attorney while under suspension. Misrepresentation, however, need not be verbal. One can make a misrepresentation by one's actions as well. This is what respondent did. Through his appearances before the courts and his communications with other attorneys, respondent clearly led others to believe he was an attorney representing a client. Such conduct is dishonest, fraudulent, and deceitful, it clearly reflects adversely on respondent's ability to practice law, and can no longer be tolerated. As we have previously observed, deliberate deception of the courts is offensive in that it not only obstructs the administration of justice but also subverts "that loyalty to the truth without which [one] cannot be a lawyer in the real sense of the word." *In re Nilva*, 266 Minn. 576, 583, 123 N.W.2d 803, 809 (1963).

Respondent's actions also constitute deliberate violations of this court's suspension order. Not only does this constitute the unauthorized practice of law, it also constitutes contempt of court. Deliberate violations of the court's orders simply cannot be condoned. As we have observed: "A principle purpose of the exercise of disciplinary authority is to assure respect for the orders of this court by attorneys, who, as much as judges, are responsible for the orderly administration of justice in this state." *In re Daly*, 284 Minn. 567, 571, 171 N.W.2d 818, 823 (1969).

A review of the evidence in this case reveals that respondent has been sincerely trying to deal with a problem he describes as "chronic procrastination." While we do not doubt that this is a very real problem to him and we sympathize with him in that respect, we must bear in mind that public confidence in the judicial system is of paramount importance in imposing discipline on attorneys. *See In re Agnew*, 311 N.W.2d 869, 872 (Minn.1981). In this case, there is a strong showing that respondent is unfit to practice law. In order to protect the public and guard the administration of justice, *In re Smith*, 220 Minn. 197, 200, 19 N.W.2d 324, 326 (1945), we order that respondent be disbarred.