**In Re Petition for DISCIPLINARY ACTION AGAINST Diana Smith LOGAN, an Attorney at Law of the State of Minnesota.**

No. C9-88-2332.

Supreme Court of Minnesota.

July 14, 1989.

William J. Wernz/Thomas C. Vasaly, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

Diana Smith Logan, Minneapolis, for respondent.

PER CURIAM.

Diana Smith Logan is the respondent in three petitions for disciplinary action involving several counts of client neglect, misappropriation of client funds, noncooperation with the disciplinary investigation, and practicing law while automatically suspended for non-payment of attorney registration fees. The first two petitions were dated September 29, and October 25, 1988, and were filed with this court by the Director of the Office of Lawyers Professional Responsibility without a preliminary hearing before a referee because of respondent's failure to respond. She was suspended from the practice of law by order of this court on November 30, 1988. On December 30, 1988, the Director's Office filed an affidavit of noncompliance with Rule 26 of Rules on Lawyers' Professional Responsibility (RLPR). On February 6, 1989, the Director filed a second supplementary petition requesting disbarment of the respondent. Respondent filed no answers. This court issued an order on February 23, 1989 deeming all allegations to be admitted and scheduling oral argument for April 5, 1989. Respondent did not file a brief or appear for oral argument. We order indefinite suspension.

Respondent was admitted to the practice of law in Minnesota on December 31, 1980, and, as far as the record indicates, practiced successfully for a number of years. Other than this proceeding, she has no prior disciplinary history. Beginning in early 1987, however, respondent began to develop a pattern of neglect and noncommunication with clients which became pro-

gressively more serious and led to the filing of ten counts of misconduct in the petitions before us.

### Lewis Matter (Count Two)

In January 1987, Helen Ray Lewis retained respondent to arrange security for a loan Lewis had made. Respondent recommended that the debtor be asked to assign an expected worker's compensation recovery to Lewis, but failed to pursue or research the matter diligently. Respondent did not write to the debtor's attorney until April 20, 1987, and was then informed that workers' compensation claims are not assignable. Helen Lewis discharged respondent from further representation regarding the loan as of May 1987.

Lewis also asked respondent to represent her in a marriage dissolution in January 1987. Respondent did not prepare a summons and petition for dissolution until June 1987. When Lewis and her husband reached a tentative settlement agreement, respondent did not advise her of questionable provisions, particularly that it did not set child support at the level indicated by Minn.Stat. § 518.551 and might be rejected by the court. Despite repeated requests, respondent did not prepare a stipulation until December 1987. That stipulation was inaccurate, and respondent falsely told Lewis a revised stipulation was in the mail before she actually mailed it on January 6, 1988. On February 5, 1988 Lewis wrote a letter requesting that respondent proceed as soon as possible and indicate what the next step would be. Respondent took no further action on the case. Lewis discharged her in April 1988 and retained new counsel.

Failure to complete the dissolution in 1987 cost the client $562 of an Earned Income Credit in addition to the $540 in attorney fees paid from January through June 1987. Respondent's conduct violated Rules 1.1, 1.3, and 1.4, Minnesota Rules of Professional Conduct (MRPC).

### Young Matter (Count Three)

On May 8, 1987 Diedri L. Young gave respondent a $300 retainer to represent her in a marriage dissolution proceeding to commence in November after Young rees-tablished Minnesota residency. Respondent promised in late May 1987 to draft a Temporary Stipulation, but did not do so and did not seek temporary relief. In November 1987, Young reached agreement with her husband on most settlement terms and informed respondent. Respondent drafted a summons and petition, but did not prepare a stipulation. On December 7, 1987, and again on December 14, 1987, respondent told Young that she had mailed copies of the summons, petition and a letter outlining the proposed stipulation. Respondent did not mail the documents until December 18, 1987. Young agreed to a visitation modification proposed by her husband's attorney on January 30, 1988, and respondent promised to prepare the documents for signature by February 5, 1988. On that day, respondent falsely told Young that her signature was not necessary at that time. On March 2, 1988, respondent falsely claimed she had left a message on Young's answering machine and that she was preparing the stipulation. On March 25, she promised to have the stipulation prepared by March 28. On April 6, she promised to have the stipulation typed and mailed, and on April 18, falsely claimed to have mailed it the previous week. On April 20, respondent claimed her secretary was instructed to contact Young, and promised to deliver the stipulation the next day. Respondent did not deliver the stipulation, claiming she was stopped by the police, but promised to bring it to Young's office the next day. When respondent did not appear, Young retrieved her file from respondent's office and found there was no stipulation in the file. Respondent did not obtain Young's signature until April 25, 1988, but did not mail a copy to opposing counsel and took no further action on the case.

The delay in drafting the stipulation and the failure to seek temporary relief has caused the loss of $150 per month in child care payments. Respondent's conduct violated Rules 1.3, 1.4, 4.1, and 8.4(c) MRPC.

### Mattson Matter (Count Four as Amended)

In May, 1988, Rebecca Mattson hired respondent for an AFDC matter and en-

dorsed a $160 AFDC warrant to respondent at respondent's suggestion, which respondent deposited in her trust account. Without Mattson's knowledge or consent, respondent forged Mattson's signature and cashed the warrant. Hennepin County informed Mattson that respondent had cashed the warrant and Mattson was entitled to the funds. Mattson contacted respondent on three different occasions seeking return of the funds but was unsuccessful and has not been in contact with respondent since September 20, 1988. Respondent's conduct violated Rules 1.4, 1.15(b)(3) and (4), 1.16(d) and 8.4(b) and (c), MRPC.

*Robbins Matter (Count Five)*

In October 1986, Elaine Y. Robbins retained respondent to represent her in a marriage dissolution proceeding and respondent prepared a summons and petition for dissolution. In March 1987, the parties stipulated to temporary relief. From April 1987, until the client discharged her in April 1988, respondent did not diligently pursue the matter.

Respondent failed to respond to opposing counsel's August 5, 1987 settlement proposal or to a follow-up letter of September 23, 1987. In December 1987, respondent falsely told Robbins that she had forwarded a copy of the settlement proposal, claiming it must have been lost in the mail. Robbins stated that she would immediately go to respondent's office to obtain a copy, and respondent agreed. Robbins waited for two hours at the office, but respondent did not appear. Respondent later falsely claimed to have sent Robbins a second copy of the letter.

Also in December 1987, Robbins asked respondent to handle an alleged tax liability arising from the marriage. Respondent obtained a power of attorney, but failed to file it or otherwise communicate with the IRS, resulting in the IRS garnishing Robbins' wages. Respondent also failed to make changes in a will as requested in February or March 1988.

Respondent failed to return repeated phone calls and refused to see Robbins when she came to the office, despite receiving messages that Robbins wanted her file

returned. Robbins obtained her file from a secretary on April 21, 1988 and left a note discharging respondent as her attorney. The next day, respondent offered to make a "deal" to complete the case without charge and provide a refund if appropriate, if Robbins would agree not to file an ethics complaint. Robbins rejected the offer. Respondent has not returned any of the $1,950 attorney fees Robbins advanced, or rendered an appropriate accounting. Respondent's conduct violated Rules 1.3, 1.4, 1.15(b)(4), 1.16(d), MRPC.

*Tax Withholding Matter (Count Six)*

From October 1, 1987 to April 27, 1988, respondent employed at least two persons, yet failed to file quarterly employer withholding returns with, or pay withholding taxes to, the Minnesota Commissioner of Revenue. This conduct constitutes a gross misdemeanor, Minn.Stat. §§ 290.53 subd. 4, 290.92 subd. 6 (1988) and violates Rule 8.4(b), MRPC.

*Additional Misconduct (Counts Seven and Nine)*

Respondent failed to pay the attorney registration fee which was due July 1, 1988, and was therefore automatically suspended on that date. Her continued practice of law while suspended violated Rules 3.4(c), 5.5(a), and 8.4(d), MRPC. Respondent also failed to deliver files to clients, file an affidavit of compliance, or otherwise comply with Rule 26, RLPR, outlining the duties of a disciplined attorney.

*Non–Cooperation with Ethics Investigation (Counts One, Eight and Ten)*

Compounding these instances of misconduct is respondent's non-cooperation with the Director's investigation into the complaints filed against her. Respondent did not provide written responses to nine complaints sent to her between May 26, 1988 and December 7, 1988, and did not provide requested financial records.

Most puzzling was respondent's sporadic contact with the Director's Office. During the investigation of the first ethics complaint, respondent met with an assistant director on June 7, 1988. She agreed to provide information regarding an allega-

tion that she had failed to withhold taxes on behalf of her employees, but did not do so, despite the fact the request was repeated in two letters mailed June 13 and 23, 1988.

In a June 28, 1988 telephone conversation, respondent agreed to attend a meeting on July 1. On July 1, she telephoned the office to reschedule the meeting to July 6 in order to accommodate travel arrangements with her son. On July 6, respondent rescheduled for the following day because her car had been rear-ended. On July 6, respondent's secretary telephoned and stated respondent could not attend because of the death of her uncle.

Respondent appeared at the rescheduled meeting on July 12, provided some requested information and signed a medical information release. Respondent agreed to appear the next day and on July 20 to provide additional requested information. On July 13, respondent left a telephone message she was unable to attend the meeting but would appear the following day. On July 14, respondent telephoned and stated the water pump on her car had broken, but she would send the requested information by certified mail and call the next day. Respondent did not do so and did not call again until July 19, when she was reminded of the meeting scheduled for the following day. On July 20, respondent telephoned the Director's office and stated she could not attend due to back pain.

On July 22, 1988, the Director issued charges of unprofessional conduct and scheduled a pre-hearing meeting August 5, 1988. Respondent did not appear or contact the Director's Office. The meeting was rescheduled for September 1, 1988. On that date, respondent requested the meeting be continued two weeks. On September 15, 1988, respondent left a message that she was unable to appear. Respondent did not respond after being notified that the Director's Office was considering moving to file a petition for disciplinary action without a hearing nor did she respond after that motion was made.

Failure to cooperate violates Rule 8.1(a)(3), MRPC and Rule 25, RLPR.

Respondent continued her erratic pattern of communication with the Director's Office while the petitions for discipline were prepared and served. The Director's Office prepared the first petition on September 29, 1988 and mailed it to respondent at her home address. Thomas Vasaly of the Director's Office spoke with respondent by telephone on September 30, 1988, and respondent promised to telephone him on Monday, October 3, 1988, to acknowledge receipt of the petition. Vasaly prepared a letter outlining options for settling the case by stipulation and mailed it to respondent on October 3, 1988. Respondent did not contact the Director's Office as promised, and on October 12, 1988, the Hennepin County Deputy Sheriff returned the notice of service as undeliverable.

The Director's Office prepared a supplementary petition for disciplinary action on October 25, 1988, and mailed copies of both petitions to respondent's home on October 31, 1989. Respondent acknowledged receipt of both petitions by telephone on November 7, 1988, promised to contact the Director's Office the next day, and failed to do so. These petitions were filed with this court November 10, 1988. The second supplementary petition was filed on February 6, 1989. Respondent's failure to respond to any of these petitions led this court to declare all allegations of misconduct contained in the petitions to be deemed admitted.

Respondent is currently suspended from the practice of law, and has been so suspended since July 1, 1988, when she failed to pay attorney registration fees. In late July, 1988, respondent underwent back surgery and convalesced at home. She removed most of her property from her law office in September, 1988, and has apparently ceased practicing law.

■ The purpose of attorney discipline is to protect the public and to deter future misconduct. *See In re Schaefer*, 423 N.W. 2d 680, 683 (Minn.1988). In determining the discipline to be imposed in a given case, we evaluate the nature of the misconduct, the cumulative weight of the disciplinary rule violations and the potential harm to

the public, the legal profession and the administration of justice. *In re Smith*, 381 N.W.2d 431 (Minn.1986); *In re Agnew*, 311 N.W.2d 869, 872 (Minn.1981). We are mindful that the imposition of disciplinary sanctions requires consistency in order to be fair. *In re Pyles*, 421 N.W.2d 321, 325 (Minn.1988). We are also mindful that no two cases are factually the same, so that while other disciplinary decisions may be helpful to us, none provides an exact analogy.

■ Respondent in this case has admitted charges of serious misconduct by her failure to answer the petitions. She neglected six separate matters for four separate clients. Though there was little financial loss due to delay and no adverse judgments attributable to neglect, clients experienced frustration from respondent's lack of communication, miscommunication and delay. They also paid retainer fees that respondent did not earn. One client did not receive temporary child support benefits, another had her wages garnished by the IRS.

In cases of neglect of more than one client's matter, this court has in the past ordered indefinite suspension or disbarment. *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988) (neglect of ten matters involving seven clients; indefinite suspension for minimum of five years); *see also In re Schaefer*, 423 N.W.2d 680 (Minn.1988) (neglect of five matters for three clients; six month indefinite suspension). Lesser sanctions have been imposed in cases of client neglect where attorneys have presented mitigating circumstances or have entered into stipulations: *In re Hart*, 431 N.W.2d 108 (Minn.1988) (stipulation admitted neglect, failure to communicate and practice while suspended; 30 day indefinite suspension and two years probation); *In re Hartke*, 407 N.W.2d 671 (Minn.1987) (stipulation admitted misappropriation and improper business transaction, trust account mismanagement and false certification, commingling of funds and neglect; three years probation); *In re Mitchell*, 368 N.W. 2d 273 (Minn.1985) (stipulation admitted neglect and failure to cooperate; two year probation).

Respondent not only neglected client matters, she also failed to file quarterly tax returns, misappropriated $160 belonging to a client by forging a signature to an AFDC warrant, and practiced law after automatic suspension for failure to pay attorney license fees. Failure to file required tax returns is a gross misdemeanor under Minn.Stat. §§ 290.53, 290.92. Forgery is criminal activity under Minn.Stat. § 609.625 *et seq.* These are serious charges, and the court has always treated them seriously. *See In re Benson*, 431 N.W.2d 120 (Minn.1988) (attorney disbarred who misappropriated a client's funds through invalid trust instruments).

Respondent's failure to cooperate with the investigation into complaints filed against her started with her failure to respond in writing when notified of the complaints, and included failure to attend meetings and to cooperate with service against her. Respondent's non-cooperation resulted in a petition for discipline being filed in this court without a hearing, as well as the subsequent order deeming facts as alleged to be admitted. Failure to cooperate with the Director's investigation is a separate ethical violation. *In re Cartwright*, 282 N.W.2d 548, 551–552 (Minn.1979) (six month suspension for failure to cooperate in investigation). Unlike *Cartwright*, however, respondent here did have some contact with the Director's Office, although she rarely followed through with commitments to answer complaints, provide records, return calls or attend meetings. Respondent's non-cooperation was not continuous, but her cooperation was sporadic and unproductive at best. *See Flanery*, 431 N.W.2d at 119.

This sporadic pattern of partial cooperation, as well as the development of a progressive pattern of neglect of client matters after six years of apparently competent practice, seems to indicate some underlying physical or psychological disability but we have no information in this regard. Respondent has made no filing or appearance at any stage in this matter nor pro-

duced any evidence in mitigation. We, therefore, hold that respondent's misconduct, as set out in the petitions before us and deemed admitted under the Rules of Lawyers Professional Responsibility, warrants indefinite suspension and we so order. Respondent may apply for reinstatement pursuant to Rule 18, RLPR, but need take only and successfully complete the professional responsibility examination as required by Rule 18(e).

In seeking reinstatement, respondent has the burden of proving her fitness to practice law.

Indefinite suspension ordered.