**OFFICE OF DISCIPLINARY COUNSEL**, Petitioner, v. **STEPHEN P. RAPP**, Respondent

NO. 13704

(ODC NOS. 1837, 1854, 1900, 1962, 1975, 1984, 2000, 2067, 2073, 2087, and 2112)

AUGUST 10, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

**540**

OPINION OF THE COURT BY PADGETT, J.

The Disciplinary Board of the Hawaii Supreme Court (Board), pursuant to Rule 2.7(c), Rules of the Supreme Court of Hawaii (RSCH), reported this matter, and recommended the suspension of the respondent, Stephen P. Rapp (respondent), from the practice of law for a period of three years. The Board's recommendation was made after a review of the findings of fact and conclusions of law and recommendation of the hearing committee (committee), which made its report to the Board pursuant to the provisions of RSCH 2.7(b).

The Board adopted all of the findings and conclusions of the committee, except the findings and conclusions with respect to misappropriation of clients' funds, which the committee had made in two, of the twelve, complaints which it had considered. The Board also accepted the committee's recommendation of a three–year suspension.

Under RSCH 2.7(c), after the Board had made its recommendation to this court, the respondent filed his opening brief.

We turn first to alleged procedural errors which respondent contends necessitate a remand. Respondent claims that the committee and the Board applied the wrong standard of proof in this case. In *Disciplinary Board v. Kim*, 59 Haw. 449, 452, 583 P.2d 333, 335 (1978), we stated clearly and explicitly that the burden of proof on the petitioner, Office of Disciplinary Counsel, was by clear and convincing evidence. However, at the time the hearing in this case was held, RSCH 2.7(b) provided that the findings of the committee should be supported by a preponderance of the evidence. That rule was amended on July 3 of this year to provide for a standard of clear and convincing evidence.

The report of the committee and of the Board do not make explicit the standard which was applied by either the committee or the Board. However, of the twelve complaints against respondent, all of which were

upheld, all of the facts found by the committee, and the Board, in six of those complaints were stipulated to. As to the other six cases, almost all of the pertinent basic facts (as distinguished from inferences) were stipulated to. The unstipulated facts included in the findings with respect to those six complaints are a relatively minor nature, so that their existence, or nonexistence, would not affect the inferences of fact drawn by the committee, the Board or this court, or the result in this case.

As we said in *Office of Disciplinary Counsel v. Kagawa*, 63 Haw. 150, 153, 622 P.2d 115, 118 (1981):

As the complaints [and stipulated facts] fully document, respondent's dealings with his clients ranged from procrastination to inexcusable neglect as evidenced by his consistent failure to respond to his clients' inquiries and to meet court deadlines. As a result, his lack of responsibility caused innumerable delays, . . . and obvious prejudice to his clients.

The record, as we read it, supports, by clear and convincing evidence, the committee's findings, adopted by the Board, under the heading "Aggravating Circumstances" which dealt with both aggravation and mitigation. Thus, even if the committee and the Board had applied the wrong standard, on the record in this case, no remand would be required, based upon our independent review of that record.

Respondent argues that when the Board vacated the committee's findings on his claimed misappropriation of clients' funds, a remand was necessitated. However, our rule, laid down in *Kim, supra*, has been that misappropriation of clients' funds results in disbarment. The committee recommended the lesser sanction of a three–year suspension, and the Board's affirmance of that recommendation, was clearly in line with its determination not to uphold the finding of misappropriation.

Respondent takes exception to petitioner, Office of Disciplinary Counsel, informing the committee that there were pending complaints against respondent's counsel. The reason for the disclosure was that the Board requires that Disciplinary Counsel place the matter on the record, so that the respondent has an opportunity, on the record, to object to or acquiesce in the continuation of his counsel under the circumstances. The record reflects that the respondent did not object to the continuation, although his counsel objected to the disclosure. In our view, the placing on

the record of such a matter so that the respondent has an opportunity to object to the continuation of counsel is only fair and proper.

Respondent also contends that a remand is necessary because of alleged ex parte communications between the committee and Disciplinary Counsel. The record does reflect that the chairman of the committee, on December 21, 1988, by letter, informed Disciplinary Counsel as follows:

The Hearing Committee assigned to this case has discussed and reviewed all of the pertinent documents, and considered the testimony of witnesses and arguments of counsel elicited during the hearing and has arrived at the following conclusion.

We feel that the submission of the Petitioner sets forth the basic conclusions reached by this committee. In addition, we do not feel Respondent's explanation for his conduct is either sufficient or acceptable. We feel the frequency and quality of the violations were such as would be tantamount to intentional conduct on Respondent's part.

Should any questions arise, please do not hesitate to contact the undersigned.

Thank you for your attention to this matter.

While it would have been preferable for the committee chairman to have sent a copy of this letter to respondent's counsel, we find nothing in the record to indicate any prior ex parte communications, and nothing in the record to indicate that the statements in the letter did not represent the true opinion of the committee, or that they were in any way influenced by any ex parte communications from Disciplinary Counsel.

Evidently thereafter Disciplinary Counsel drew up the findings and conclusions and recommendations of the committee which were signed by all three members. As is provided for under RSCH 2.7(c), respondent was given a full, and complete, opportunity to brief, and argue, his objections to the findings, conclusions and recommendations of the committee, and did so. And, in fact, as we have earlier noted, the Board refused to go along with the findings with respect to misappropriation of clients' funds. We see no indication of any prejudice to the respondent by reason of the sending of the letter in question, and thus no reason for a remand based upon it.

Respondent next argues that the findings of intentional violations, neglect in the Pfeffer case, and an effort to mislead Disciplinary Counsel

in its investigation of the Cortez case, were insufficiently supported by the record and should be vacated.

He argues that the frequency and quality of the alleged violations does not support an inference of intentional conduct. Here we are dealing with twelve complaints involving six divorce and six driving under the influence (DUI) matters, and respondent's conduct with respect thereto, over an approximate two–year period. On any fair reading of the evidence, or even of the stipulated evidence, a clear and convincing pattern of broken promises to perform services, failure to return telephone calls, failure to communicate with clients, failure to make court appearances, and of resulting potential and, in most cases, actual, emotional, and often financial damage to the clients, emerges. We may be dealing with a matter of semantics here. In taking the cases, obviously, respondent did not set out intentionally to cause these things, but it cannot be escaped that he knowingly, and therefore intentionally, neglected his clients in these cases.

Respondent argues that "the findings that respondent missed a court date in Pfeffer and failed to return calls from Pfeffer were against the weight of the evidence." The findings protested are based upon a determination as to credibility. The committee heard the witnesses, and made that determination with respect to the matters raised against the respondent. Upon a reading of the record, there certainly was clear evidence which, if believed, would support the findings protested.

Respondent then argues that at no time did he endeavor to mislead Disciplinary Counsel in the course of its investigation of the Cortez matter. We are here dealing with a conclusion of law as to the effect of respondent's false statements to Disciplinary Counsel in March and October of 1987 that the Cortez divorce had been granted, that a final hearing had been held and the court had orally granted the decree, but a formal written decree apparently still needed to be entered. The committee concluded that DR 1–102(A)(4), conduct involving dishonesty, fraud, deceit, or misrepresentation, and DR 1–102(A)(5), conduct prejudicial to the administration of justice, had been violated. Findings VII, paragraphs 8 and 13, which were stipulated to, fully establish the factual basis for the conclusions objected to, and we see no legal error in the drawing of those conclusions by the committee, and the Board.

Finally, respondent argues that a three–year suspension is excessive under all of the circumstances of this case. In connection with that contention, he again argues that the overturning of the misappropriation findings should somehow prevent respondent from being suspended. However, as we have earlier pointed out, under *Kim* misappropriation leads to disbarment. This case is very close to *Kagawa,* with the exceptions that in Kagawa's case, there were fifteen complaints as against twelve here, and Kagawa did not appear and offer anything in the way of mitigation.

In *Kagawa,* we ordered a four–year suspension. On a review of the record, including the testimony offered by and on behalf of the respondent, we are not convinced that the mitigating circumstances require a different result. A three–year suspension is in line with our holding in *Kagawa.* It also falls within the parameters set forth in "Standards for Imposing Lawyer Sanctions" (1986), promulgated by the American Bar Association Center for Professional Responsibility and approved by the American Bar Association House of Delegates in 1986, which we consider a useful reference in this area. That document provides as follows at pages 32 and 33:

### 4.4 Lack of Diligence

*Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:*

. . . .

### 4.42 Suspension is generally appropriate when:

(a) *a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or*

(b) *a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.*

The record here clearly and convincingly demonstrates that respondent knowingly failed to perform services for his clients in these cases, which caused injury or potential injury to the clients, and that he engaged in a pattern of neglect, which caused injury or potential injury to his clients. Suspension therefore is the appropriate remedy and, given the precedent of *Kagawa,* the fact there are twelve cases involving neglect, both by omission and commission over a two–year period, a three–year

suspension, as recommended by the Board, and the committee, taking into consideration the aggravating and mitigating circumstances, is the appropriate sanction.

Accordingly, respondent is ordered suspended from the practice of law for the period of three years. The suspension will take effect thirty (30) days from the date hereof.

*Gerald H. Kibe*, Chief Disciplinary Counsel, for petitioner.

*John Rapp* for respondent.