900 P.2d 777

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Collin K.C. LAU, Respondent.**

**No. 18459.**

Supreme Court of Hawai'i.

July 25, 1995.

Carole R. Richelieu, Asst. Disciplinary Counsel (Laureen K.K. Wong, Chief Disciplinary Counsel with her on the brief), Honolulu, for petitioner Office of Disciplinary Counsel.

Collin K.C. Lau, on the briefs, Honolulu, respondent pro se.

Before MOON, C.J., and KLEIN, LEVINSON and RAMIL, JJ., and CRANDALL, Circuit Judge, in Place of NAKAYAMA, J., Recused.

1. RSCH Rule 2.16(d) provides:
   Within ten days after the effective date of the disbarment or suspension order, the disbarred or suspended attorney shall file with this court an affidavit showing: (1) that he or she has fully complied with the provisions of the order and with these rules; (2) all other state, federal and administrative jurisdictions to which he or she is admitted to practice; and (3) that he or she has served a copy of such affidavit upon [Disciplinary] Counsel. Such affidavit shall also set forth the residence or other address of

PER CURIAM.

The Disciplinary Board (Board) has filed a report recommending the suspension of the respondent Collin K.C. Lau from the practice of law for a period of one hundred twenty days.

For the reasons set forth below, we agree with the report and recommendation of the Board and therefore suspend Lau, effective March 7, 1995, from the practice of law for a period of one hundred twenty days.

## I. BACKGROUND

The Board's report and recommendation are made pursuant to a "stipulation of facts and proposed discipline" between Lau and the Office of Disciplinary Counsel (ODC). From that stipulation and the record of these proceedings, we note the following relevant facts.

On December 8, 1994, this court ordered Lau suspended from the practice of law for sixty days, effective January 7, 1995. On January 20, 1995, Lau filed an untimely affidavit pursuant to Rule 2.16(d) of the Rules of the Supreme Court of the State of Hawai'i (RSCH).[1]

On March 9, 1995, ODC moved for an order to show cause as to why Lau should be reinstated to the practice of law. ODC alleged that Lau had not complied with this court's December 8, 1994 suspension order (the suspension order) because, on January 17, 1995, Lau appeared at a minimum term hearing before the Hawai'i Paroling Authority (HPA) and represented his client, Jerry Alameida (or Almeida) [hereinafter, Alameida], a prison inmate. On March 10, 1995, Lau filed an RSCH 2.17(b) affidavit seeking reinstatement.[2] Lau averred that he had

the disbarred or suspended attorney where communications may thereafter be directed to him or her.
Lau's affidavit failed to show the other state and federal courts, if any, before which he is admitted to practice law. Nor did Lau's affidavit set forth his residence or other address where communication could be directed to him.

2. RSCH 2.17 provides in relevant part:

"complied with the terms and conditions of the Court's Order in not doing any legal work during the sixty day suspension period," but also averred that he "did appear as an individual at the [HPA] on January 18, 1995 and erred in not making that fact clear to the HPA." Lau submitted a similar affidavit in response to ODC's motion for an order to show cause.

On March 28, 1995, this court issued an order staying Lau's reinstatement. We noted the controversy regarding whether Lau had complied with the suspension order, concluded that Lau had failed to meet his burden of showing compliance with the suspension order, and concluded that the matter should be submitted to the orderly procedures established under RSCH 2.7.[3]

As allowed by RSCH 2.7(e), and in lieu of a hearing before a hearing committee, Lau and ODC stipulated to certain facts, violation of enumerated rules of professional conduct, and a proposed disciplinary disposition. In particular, ODC and Lau stipulated that: (1) "[o]n January 17, 1995 [Lau] appeared before the [HPA] and actively represented defendant Jerry Alameida at a minimum setting hearing in relation to *State v. Alameida*"; (2) Lau "was suspended from the practice of law at the time he appeared before the [HPA]"; and (3) Lau's "failure to abide by the Court's December 8, 1994 suspension Order and RSCH 2.16 and RSCH 2.17(a) and (b) is violative of HRPC 3.4(e) (disobeying an obligation under the rules of tribunal)." Lau and ODC also stipulated to five aggravating factors, including four prior informal admonitions and the suspension order. In mitigation, Lau and ODC stipulated that Lau "did not act with a dishonest or selfish motive," had "exhibited a cooperative attitude toward these proceedings," and had "expressed remorse for his conduct." Finally, Lau and ODC agreed to a proposed public reprimand,

but expressly acknowledged that the agreement was neither binding on the Board nor on this court.

After hearing argument from ODC and Lau, the Board accepted the factual stipulations and the stipulation that Lau's acts had violated Hawai'i Rules of Professional Conduct (HRPC) 3.4(e), but declined to accept the proposed public reprimand. Instead, the Board recommended that Lau be suspended from the practice of law for one hundred twenty days, "commencing retroactively on March 7, 1995," the day before Lau was eligible for reinstatement from the prior sixty-day suspension.

Upon review of the Board's report and recommendation, we noted that the issue of the appropriate sanction to be imposed when a respondent attorney practiced law while suspended had not previously been raised in this jurisdiction. Accordingly, on May 22, 1995, we ordered Lau and ODC to file briefs addressing the issue.

## II. *ISSUE*

The sole issue presented by this proceeding is the nature of the appropriate sanction to be imposed when a respondent attorney practices law in violation of an order of suspension from the practice of law.

## III. *DISCUSSION*

### A. *Lau's Arguments*

Without citing any authority, Lau argues that the Board erred when it recommended a one hundred twenty day suspension instead of the proposed public reprimand. Lau asserts that he "negligently fail[ed] to inform the members of the [HPA] ... [that his] appearance was intended to be as a private citizen on a purely voluntary basis to answer questions of the parole board about [his] past representation of Mr. Alameida in various

(a) No suspended or disbarred attorney may resume practice until reinstated by order of this court except as provided in Rule 17(d).

(b) ...

An attorney suspended from practice for one year or less who has complied with the suspension order and has paid all required fees shall be reinstated by order of the court at the end of the period of suspension by filing with the

court and serving upon [Disciplinary] Counsel an affidavit to that effect....

3. In sum, RSCH 2.7 provides for appointment of a hearing committee to take and evaluate evidence, a report from the hearing committee to the Board, and a report and recommendation to this court when public discipline is recommended.

court appointed cases." Lau notes that he was not compensated for the appearance and that the hearing lasted approximately ten minutes. "For that failing," Lau acknowledges, he "takes full responsibility and in the interest of saving judicial and administrative time [has] sought to formally address the ODC's investigation by way of a stipulated proceeding admitting his error."

### B. ODC's Arguments

ODC argues that Lau's assertion that he appeared individually and not as Alameida's attorney is contrary to its stipulation and that Lau has "not establish[ed] that the Board['s] recommended 120–day suspension is inappropriate under the facts of this case." ODC further points to Standards 8.2, 8.3, and 8.4 of the *Standards for Imposing Lawyer Sanctions* (1986) (ABA Standards), promulgated by the American Bar Association Center for Professional Responsibility, in suggesting that admonition is not appropriate in this case and observes that the unauthorized practice of law by a suspended attorney is a violation of a prior disciplinary order, citing *Florida Bar v. Neckman*, 616 So.2d 31 (Fla. 1993). Lastly, ODC directs our attention to decisions generated by courts in other jurisdictions in which the sanctions for practicing while suspended have ranged from public reprimand to disbarment.

### C. Analysis

■ As the ultimate trier of both fact and law in cases involving the discipline of attorneys, *Office of Disciplinary Counsel v. Kagawa*, 63 Haw. 150, 155, 622 P.2d 115, 119 (1981); *Disciplinary Board v. Kim*, 59 Haw. 449, 451, 583 P.2d 333, 335 (1978), we are not bound by the findings of the Board or by its hearing committee and will independently consider all testimony and evidence in the record. *Disciplinary Board v. Bergan*, 60 Haw. 546, 554–555, 592 P.2d 814, 819 (1979). In short, we review such cases *de novo*. The Board's recommendation as to discipline is entitled to greater weight than that of the hearing committee, *Bergan*, 60 Haw. at 554, 592 P.2d at 819. Thus, in this case, inasmuch as a stipulation regarding the proposed sanc-

tion was entered in lieu of a committee recommendation, the Board's recommended disposition is entitled to greater weight than that contained in the stipulation.

HRPC 3.4(e) provides in relevant part:

A lawyer shall not:

. . . .

(e) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

The RSCH provide, in plain and unambiguous language, that a suspended or disbarred attorney may not resume the practice of law until he or she is reinstated by an order of this court, except that attorneys who are suspended for failure to pay fees may be reinstated by the clerk upon payment in accordance with RSCH 17(d). RSCH 2.17(a).[4] Thus, the practice of law during a period of suspension or disbarment violates both the order of suspension or disbarment and RSCH 2.17(a).

■ Lau's claim that he appeared before the HPA in some individual capacity is at odds with both the stipulation and the record reflected in the transcript of the hearing before the HPA. The stipulation provided, in relevant part:

4. On January 17, 1995, [Lau] appeared before the [HPA] and *actively represented* defendant Jerry Alameida at a minimum setting hearing in relation to *State v. Alameida* (First Circuit Court, State of Hawai'i).

5. [Lau], however, was suspended from the practice of law at the time he appeared before the [HPA].

(Emphasis added.) Parties are ordinarily bound by their stipulations, although we have allowed stipulations to be set aside in order to prevent manifest injustice. *See, e.g., Gakiya v. Hallmark Properties, Inc.*, 68 Haw. 550, 555, 722 P.2d 460, 464 (1986).

■ On the record before us, we perceive no valid reason to set aside the aforementioned stipulated facts. At the January 17, 1995 hearing before the HPA, the HPA chair

4. *See supra* note 2.

advised Alameida that *"your lawyer* is here to tell us whether there are any mitigating circumstances surrounding any one of these crimes, and whether there are any mitigating factors in your life we should consider on the sentence." (Emphasis added.) Without disclaiming any attorney-client relationship, Lau provided information regarding Alameida's prior crimes and the proceedings that adjudicated them, made argument regarding Alameida's minimum sentence, and "ask[ed] the [HPA] to consider setting the minimum [sentence] at three years, four months . . . which would make him a release candidate in October of '97." Lau offered his client for questioning. In short, Lau plainly acted as Alameida's attorney before the HPA on January 17, 1995, a mere ten days after Lau was suspended from practicing law.

The only existing Hawai'i case law on the the subject of practicing law while prohibited from doing so by an order is quite dated and was decided long before the promulgation of the HRPC or the disciplinary rules that preceded them. *See In re Mills,* 23 Haw. 224 (1916)[5] (holding that attorney had not fully acquiesced in court's judgment of disbarment and refusing to reinstate him on ground that he had practiced law while disbarred).

Other jurisdictions have viewed the practice of law while suspended as sufficiently grave to warrant the additional sanction of disbarment or suspension.[6] The frequency of suspensions and disbarments indicates the seriousness with which courts consider violations of disciplinary orders. *See, e.g., People v. Dieters,* 883 P.2d 1050 (Colo.1994) (After suspension for ninety days, attorney failed to submit affidavit for reinstatement, but believed he was reinstated. Attorney appeared at deposition one day after effective date of suspension, but believed suspension order was not yet effective. During suspension, attorney consulted with clients and prepared documents in dissolution and support cases and represented his daughter in dispute with her condominium association. Court ordered ninety-day suspension.); *People v. Ross,* 873 P.2d 728 (Colo.1994) (Attorney entered appearance on behalf of criminal defendant and tried case while suspended. Attorney also failed to respond to disciplinary investigation. There was no harm to client. Attorney's disciplinary history was characterized as not extensive although had history of prior suspension and letter of admonition. Attorney was suspended for three years.); *People v. Kargol,* 854 P.2d 1267 (Colo.1993) (Attorney made appearances in at least four proceedings during period of suspension for failure to comply with continuing legal education requirements. Attorney was suspended for one year and one day.); *People v. Stauffer,* 858 P.2d 694 (Colo.1993) (Attorney provided legal advice to people he lived with and to others to whom he was introduced while under order of suspension. Aggravating circumstances included history of prior discipline, dishonest or selfish motive, pattern of misconduct, multiple disciplinary offenses, obstruction of disciplinary process, failure to acknowledge wrongdoing, and substantial experience in practice of law. Attorney was disbarred.); *The Florida Bar v. Greene,* 589 So.2d 281 (Fla.1991) (Attorney engaged in practice of law on behalf of personal friend, without fee. Florida Supreme Court noted

---

5. After disbarment, Mills took up collection work. This court concluded that Mills was acting and could act as his own attorney where he purchased and paid for collection cases and prosecuted them in his own name. However, where payment for the assignment of claims was contingent upon recovery, this court concluded that "such transactions constituted an evasion of the judgment of disbarment and amounted to nothing more nor less than the appearance in court of petitioner as an attorney upon a contingent fee," *i.e.,* the unauthorized practice of law, and denied reinstatement.

6. *See, e.g., In re Larson,* 512 N.W.2d 454 (N.D. 1994) (attorney disbarred where attorney continued to practice law during suspension; attorney

had been suspended previously for mishandling client's funds and practicing while suspended); *In re Tritschler,* 169 Wis.2d 298, 485 N.W.2d 261 (1992) (attorney suspended for three years where, during suspension for failure to comply with CLE requirements, attorney continued to practice law); *In re Jorissen,* 391 N.W.2d 822 (Minn.1986) (attorney disbarred where, while suspended, attorney, *inter alia,* appeared on behalf of juvenile in criminal proceeding, appeared at pre-trial hearing and waived client's rights, and made appearances before administrative tribunal); *In re Logan,* 442 N.W.2d 312 (Minn. 1989) (attorney who practiced law while suspended for non-payment of registration fees was suspended indefinitely).

that attorney had long history of disciplinary violations, concluded further that suspension would be fruitless and disbarred him.); *In re Hankin*, 116 Wash.2d 293, 804 P.2d 30 (1991) (Attorney suspended for failing to comply with continuing legal education requirements. With knowledge of suspension, attorney advised and represented clients, accepted legal fees, and made court appearances. Washington Supreme Court concluded that attorney violated ethical duties to his clients, legal system, and legal profession, but noted subsequent evidence that his rehabilitation had begun. Attorney was suspended for one year and one day.); *The Florida Bar v. Jones*, 571 So.2d 426 (Fla.1990) (Referee recommended extending ninety-one day suspension to a two-year suspension upon finding that attorney, *inter alia*, did not make good faith effort to comply with suspension order, failed properly to notify clients of his suspension, and falsely represented his participation in legal proceeding during suspension. Florida Supreme Court disbarred attorney.); *The Florida Bar v. Bauman*, 558 So.2d 994 (Fla. 1990) (During a six-month suspension, attorney engaged in at least five distinct acts of practicing law and on one occasion was held in contempt by trial court judge for holding himself out as attorney. Referee recommended a three-year suspension, but state bar recommended disbarment. Florida Supreme Court stated that "[w]e can think of no person less likely to be rehabilitated than someone, like respondent, who willfully, deliberately, and continuously, refuses to abide by an order of this court" and disbarred attorney.); *In re Trimberger*, 171 Wis.2d 357, 491 N.W.2d 90 (1992) (Attorney made at least twenty-two appearances in circuit court while license suspended for failing to comply with continuing legal education requirements. Attorney represented and billed clients for services rendered during period of suspension. During same period, circuit court found attorney guilty of practicing law without license and fined her $500.00. Wisconsin Supreme Court imposed a six-month suspension to "ensure that her license will not be reinstated without application, investigation by the Board, [and] order of this court."); *In re Larson*, 485 N.W.2d 345 (N.D.1992) (In addition to two-year suspension for misappropriating client funds, court imposed seven-month suspension for practicing while suspended).

■ The ABA Standards are a useful reference when determining disciplinary sanctions. *Office of Disciplinary Counsel v. Rapp*, 70 Haw. 539, 544, 777 P.2d 710, 714 (1989). The ABA Standards provide in relevant part:

8.1 Disbarment is generally appropriate when a lawyer:

(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation cause injury or potential injury to a client, the public, the legal system, or the profession[.]

. . . .

8.2 Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

8.3 Reprimand is generally appropriate when a lawyer:

(a) negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession[.]

. . . .

8.4 An admonition is generally not an appropriate sanction when a lawyer violates the terms of a prior disciplinary order or when a lawyer has engaged in the same or similar misconduct in the past.

We cannot attribute Lau's acts in this case to mere negligence. Our suspension order was clear, and the effect of it was certain: the suspension order withdrew Lau's authority to practice law.

■ We view any practice of law while suspended with considerable concern.[7] The

---

**7.** At least one jurisdiction treats such violations as contempt of court. *See In re Anonymous,* 641 N.E.2d 31 (Ind.1994).

purpose of suspension or disbarment is to protect the public and to maintain the integrity of the profession and the dignity of the courts. *See, e.g., Kim,* 59 Haw. at 455, 583 P.2d at 337. The practice of law is an honorable profession that requires its practitioners to behave in accordance with high ethical standards, including compliance with court rules and orders. It is our solemn duty to regulate the practice of law in this state and to ensure that the integrity of the profession is maintained by disciplining attorneys who indulge in practices inconsistent with the high ethical standards demanded of all members of the bar. *Bergan,* 60 Haw. at 553, 592 P.2d at 818. Thus, as noted above, we have prohibited lawyers, *inter alia,* from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." RSCH 3.4(e). The rules of this court provide that an attorney who is disbarred or suspended as a result of a disciplinary proceeding may not resume the practice of law until allowed to do so by an order of this court.[8] RSCH 2.17(a).

The integrity of the licensing and disciplinary processes relating to attorneys is directly challenged when a suspended attorney continues to practice law in violation of a suspension order. Such a challenge undermines the integrity of both the legal profession and the dignity of the courts, and we will not permit such a challenge to go unnoticed. As we have indicated, ABA Standard 8.1(a) provides that disbarment is generally appropriate when a lawyer intentionally or knowingly violates the terms of a prior disciplinary order. When an order of suspension is entered on the record and the rules clearly provide that the practice of law may not be resumed except pursuant to an order of this court, it strains credulity to characterize the practice of law while suspended as anything but knowing. For purposes of ABA Standard 8.2, practicing law while suspended is a "further act[ ] of misconduct." At a bare minimum, such violations and acts of misconduct harm the legal system, the profession, and the public by encouraging disrespect for the law and the courts and reinforce a perception of privilege and arrogance. Thus, we hold that practicing law while suspended or disbarred warrants the severe sanctions of suspension or disbarment.

There is nothing in the record before us to suggest that Lau's acts harmed his client. However, Lau's disregard of this court's suspension order and the rules that govern the practice of law can do nothing but add to the growing cynicism about lawyers and the practice of law, encourage disrespect for and noncompliance with court orders, and further denigrate the integrity of the profession and our regulation of it. Such acts undermine the public's confidence in our system of justice and therefore do great harm to the public, the legal system, the profession, and the dignity of the courts. A mere reprimand in this case would encourage others to disregard the orderly processes by which our courts and the legal profession are governed.

## IV. *CONCLUSION*

The facts that Lau's client appears to have suffered no harm in this case, that Lau did not act with a dishonest or selfish motive, and that Lau cooperated with these proceedings, cause us to weigh this case in favor of suspension instead of the disbarment that would otherwise be warranted. Therefore, we accept the recommendation of the Board and suspend Lau from the practice of law for an additional one hundred twenty days, effective March 7, 1995. A separate order of suspension will be entered contemporaneously with the filing of this opinion.

---

8. An attorney who is suspended for failure to pay registration fees may be reinstated by the clerk of this court upon payment of arrears and satisfaction of other requirements imposed by the board of directors of the Hawai'i State Bar Association. *See* RSCH 17(d)(4). We are not called upon in this case to determine sanctions for one who practices while under such administrative suspension, but nevertheless note that other courts have imposed sanctions for practicing while under administrative suspensions. *See, e.g., In re Tritschler* and *In re Logan, supra* note 6.