In re Petition for **DISCIPLINARY ACTION AGAINST Harry N. RAY, an Attorney at Law of the State of Minnesota.**

No. CX–81–1120.

Supreme Court of Minnesota.

March 16, 1990.

Kenneth L. Jorgenson, Sr. Asst. Director, St. Paul, for appellant.

Jack S. Nordby, Minneapolis, for respondent.

## PER CURIAM.

This court suspended respondent, Harry N. Ray, for 3 years by order dated June 14, 1985. *In re Ray*, 368 N.W.2d 924 (Minn. 1985). The charges now before this court are related to respondent's actions while under suspension. Those charges were referred to a referee who, after holding a hearing on the petition and supplementary petition for disciplinary action, concluded that respondent engaged in improper activities for a suspended attorney and recommended disbarment if respondent refused to resign permanently from the bar. In the alternative, the referee recommended continuing respondent's suspension for 1 year under supervision of an attorney if respondent works for an attorney. Because respondent ordered a transcript, the referee's findings, conclusions and recommendation are at issue pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). We modify the referee's recommendation and continue respondent on suspension.

Respondent was admitted to practice law in Minnesota in October 1953. He is now 67 years old, married and has eight children and six grandchildren.

The parties do not dispute all the referee's findings. They agree on the following facts: Respondent was the sole shareholder, officer and director of Harry N. Ray, Ltd., a professional corporation, and practiced law in Bloomington, Minnesota. John F. Markert, an attorney admitted to practice law in Minnesota since 1956, was an associate with the Harry N. Ray, Ltd. law firm. After respondent's suspension, respondent amended the articles of incorporation to change the corporate name to John F. Markert, Ltd. and to transfer all shares to Markert. Respondent continued as an employee of this organization at least

William J. Wernz, Director of the Office of Lawyers Professional Responsibility,

until the time the referee issued his report on July 28, 1989. Respondent did pro bono work for various charitable organizations, churches and needy clients and served in the military.

The incidents giving rise to the latest petition are as follows:

On October 12, 1987, respondent notarized the signatures at the execution of a will drafted by Markert for Mary Voita. No licensed attorney was present at the execution. In January of 1988, Voita's daughter, Mary Binek, called respondent and asked him to send her a copy of her mother's will. Respondent refused to send a copy to Binek, but sent one to Voita. In February of 1988, Binek filed a complaint with the director's office alleging that respondent held himself out as Voita's lawyer and drafted Voita's October 12, 1987 will. In their statements and testimony, respondent and Markert made inconsistent statements about the number of times they visited Voita together and individually.

In October 1986, Virginia O'Neill was involved in a redemption from foreclosure with a company represented by Jeffrey Lang. Lang wrote respondent and said that O'Neill identified respondent as her lawyer. In January and February 1987, Lang talked with respondent on the telephone about settling the case. Markert, not respondent, appeared as O'Neill's attorney at a March 1987 hearing on a related unlawful detainer action. At the time of respondent's suspension in 1985, Lang's law firm was notified by certified mail of the suspension.

In February 1985, before respondent's suspension, Lois McNamara retained respondent to represent her in an automobile accident matter. Shortly after respondent's suspension, McNamara agreed to have Markert represent her. McNamara expressed dissatisfaction with Markert's representation and later discharged both respondent and Markert and retained another lawyer. McNamara then discharged her new lawyer and rehired John F. Markert, Ltd. Between May and December 1988, respondent made several attempts to negotiate a settlement with McNamara's insurance company. In the fall of 1988, respondent told McNamara that if her case went to trial, an attorney other than Markert would handle the case. McNamara knew that respondent was suspended, but thought he was in the process of being reinstated.

Based on a memo to the Voita file, the referee concluded that respondent drafted the will while suspended. In addition, the referee concluded that respondent engaged in improper activities for a suspended attorney in the O'Neill and McNamara matters. The director agrees with these findings, but asserts, disputing the referee, that there is clear and convincing evidence of respondent knowingly making false statements to the director's office about the Voita matter and holding himself out as a lawyer to O'Neill. Further, the director objects to the referee's failure to find that respondent lied to McNamara about his ability to represent her.

Respondent disputes the referee's conclusion that he acted improperly in the Voita, O'Neill and McNamara matters. Specifically, he challenges as unsupported by clear and convincing evidence the referee's finding that respondent must have drafted an earlier will for Voita. Respondent also denies that he led McNamara to believe that he would soon be reinstated or would handle the case as the referee's findings suggest.

The issues before us are:

I. Whether clear and convincing evidence supports the referee's finding of the unauthorized practice of law;

II. Whether the referee erred in finding that clear and convincing evidence did not support allegations that respondent made false statements to the director's office and to a client; and

III. What the appropriate discipline should be.

■■■■ The director has the burden of proof in disciplinary proceedings. *In re Witherow,* 226 Minn. 58, 60, 32 N.W.2d 176, 177 (1948). This court has explained the standard of proof in attorney disciplinary proceedings as requiring full, clear

and convincing evidence. *In re Miera*, 426 N.W.2d 850, 853 (Minn.1988). That is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. *Id.* This court has repeatedly afforded great weight to findings of fact and conclusions of a referee. *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). Although recommendations for discipline of an attorney made by a referee are afforded the same great weight, this court alone has the final responsibility to determine appropriate discipline. *In re Klein*, 442 N.W.2d 317, 321 (Minn.1989).

I. The director asserts, and respondent denies, that respondent engaged in unauthorized practice of law in violation of Minn.Stat. § 481.02 (1988) in the Voita, O'Neill and McNamara matters. This court discussed the parameters within which a suspended lawyer may work as a legal assistant in *In re Jorissen*, 391 N.W.2d 822 (Minn.1986). There, this court stated:

> The line drawn between the work of a law clerk and an attorney is a fine one. The composition and preparation of legal documents by one not authorized to practice law for approval and signature by an attorney does not ordinarily constitute the unauthorized practice of law. As long as the legal assistant's work is of a preparatory nature only, such as legal research and investigation, such that the work merges with the work of a supervising attorney, it is not considered to be the practice of law. Where, however, the non-lawyer acts in a representative capacity in protecting, enforcing, or defending the legal rights of another, and advises and counsels that person in connection with those rights, the non-lawyer steps over that line.

*Id.* at 825 (citations omitted).

### A. *Voita Matter*

The referee found: "A will different from the October, 1987 will was drafted before May 26, 1987. Markert denies drafting more than one will. The earlier will must have been prepared by Ray." This conclusion rests only on Director's Exhibit 7, a memo to the Voita file dated May 26, 1987. In that memo, respondent wrote:

> We were also asked by Mary Voita to prepare a new Will and took to the nursing home and she read very carefully but wanted a change to provide an amount of approximately $1500 or a used car to her son Paul. * * * While we had her execute the Satisfaction of Mortgage we were reluctant to file it since she did not execute the Will and we did not want to have any question come up * * *.

■ This memorandum reveals only that Mary Voita asked respondent and Markert to prepare a new will. True, the memo shows, and respondent admits, that *some* will had been prepared before May 27, 1989; it does not, however, shed any light on who prepared that will. Both Markert and respondent deny drafting the will referred to in the memo. Markert also testified that respondent did not participate in drafting the will. Because neither the memorandum to the file nor any other evidence in the record communicates who drafted the original will for Voita, the record does not support a finding that respondent drafted a will for Mary Voita before May 27, 1987.[1]

■ The director claims that respondent engaged in the unauthorized practice of law by supervising the execution of Voita's will. The law, however, does not require a licensed attorney to supervise the execution of a will. The sections governing execution of wills in the Uniform Probate Code provide in pertinent part: "[E]very will shall be in writing signed by the testator * * * and shall be signed by at least two

---

1. Even assuming that respondent did draft an earlier will, respondent may not have necessarily crossed the *"Jorissen* line." *Jorissen* allows that "[t]he composition and preparation of legal documents by one not authorized to practice law for approval and signature by an attorney does not ordinarily constitute the unauthorized practice of law * * *. [If that] work merges with the work of a supervising attorney, it is not considered to be the practice of law." *In re Jorissen*, 391 N.W.2d 822, 825 (Minn.1986). There is no evidence that respondent failed to submit any draft for the approval and signature of a supervising attorney as *Jorissen* allows.

persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will." Minn.Stat. § 524.2–502 (1988). "Any person generally competent to be a witness may act as a witness to a will." Minn.Stat. § 524.2–505 (1988).

The director cites Minn.Stat. § 481.02, subd. 3(2) as authority for asserting that respondent engaged in the unauthorized practice of law by supervising the execution of Voita's will. This provision allows a non-lawyer to draft a will in an emergency under the supervision of an attorney; it does not prohibit non-lawyers from supervising the execution of wills. Therefore, respondent's work on the Voita matter did not constitute the unauthorized practice of law by clear and convincing evidence.

### B. *O'Neill and McNamara Matters*

■ Respondent sent notice of his suspension to O'Neill and McNamara. Also, O'Neill's attorney corrected his misperception of respondent as an "attorney at law" by March 3, 1987, when he wrote a letter dropping the designation of respondent as an attorney at law. Accordingly, the record supports the referee's finding that respondent did not hold himself out as an attorney to O'Neill and that McNamara knew of respondent's suspension.

A legal assistant engages in the unauthorized practice of law where a "non-lawyer acts in a representative capacity in protecting, enforcing, or defending the legal rights of another, and advises and counsels that person in connection with those rights * * *." *In re Jorissen*, 391 N.W.2d 822, 825 (Minn.1986). In *Jorissen*, the court found that a suspended attorney engaged in the unauthorized practice of law by, *inter alia*, negotiating for and counseling a client in a marital dissolution stipulation. Moreover, in other jurisdictions, courts commonly hold that suspended attorneys are not permitted to conduct settlement negotiations on behalf of other persons. Annotation, *Nature of Legal Services or Law–Related Services Which May be Performed for Others by Disbarred or Sus-*pended *Attorney*, 87 A.L.R.3d 279, 312–14 (1978 & Supp.1989); *see, e.g., In re Bodkin*, 21 Ill.2d 458, 173 N.E.2d 440 (1961) (negotiating settlement with insurance company while suspended warranted 3–year suspension).

■ O'Neill told Jeffrey Lang, an attorney opposing her in a matter, that respondent was her attorney. Lang talked with respondent on the telephone a number of times about settling the case. In March 1987, Lang wrote respondent with final terms and to inform respondent that Lang intended to proceed with an unlawful detainer action. Respondent does not dispute that he advised O'Neill in this matter.

With respect to the McNamara automobile accident matter, respondent does not deny that, when McNamara asked him to represent her, he told her that he could not appear in court, but could negotiate over the phone with her insurer. Further, respondent does not deny that he made at least two attempts in 1988 to negotiate a settlement with McNamara's insurer. Respondent also advised McNamara to reject an offer of $65,000 from the insurer.

Thus, the record supports the referee's conclusion that respondent engaged in activities improper for a suspended attorney in the negotiations for McNamara and O'Neill.

II. The director argues that, because the referee found that respondent must have prepared a will, to be consistent, the referee should also have found that respondent knowingly made false statements to the director's office. The referee found that respondent did not make false statements to the director even taking into account the inconsistencies between Markert and respondent's testimony. These inconsistencies arose from respondent's sworn statements to the director and testimony at the panel hearing in 1988. The inconsistencies related only to the number of visits to Voita's nursing home in 1986 and 1987. The referee apparently found that these inconsistencies did not support a finding of false statements. The evidence supports this conclus. ...

The director also alleges that respondent made false statements to McNamara. Minn.R.Prof.Conduct 4.1 provides: "In the course of representing a client a lawyer shall not *knowingly* make a false statement of fact or law." (Emphasis added.) Although respondent's statements to McNamara that he could negotiate for her without Markert's participation may have been false, the record does not reveal nor does the director point to any evidence that respondent intentionally made false statements to McNamara. Thus, the sole charge proven by clear and convincing evidence is respondent's negotiations on behalf of McNamara and O'Neill.

III. What then is the appropriate discipline? The referee recommends that respondent be allowed to resign as an attorney if he agrees never to apply for readmission and never to work for a lawyer or in a law firm. If respondent refuses to resign, the referee recommends disbarment. In the alternative, the referee recommends continuing his suspension for 1 year and, if ever employed by an attorney, respondent must work under a supervisor who would report to the director quarterly for 1 year.

We have imposed discipline for practicing law while suspended for failing to pay attorney registration fees. *In re Knutson*, 405 N.W.2d 234 (Minn.1987) (public reprimand and 2–year probation); *In re Fitzgerald*, 366 N.W.2d 262 (Minn.1985) (public reprimand, 90–day suspension, 3–year probation); *In re O'Brien*, 362 N.W.2d 307 (Minn.1985) (indefinite suspension for minimum of 2 years). We have applied harsher discipline in a case where, as here, an attorney suspended for disciplinary violations continued to practice law. *In re Jorissen*, 391 N.W.2d 822 (Minn.1986) (disbarment). *Jorissen,* however, involved more blatant unauthorized conduct than here. In *Jorissen,* in addition to counseling a client while negotiating a marital dissolution stipulation, a suspended attorney appeared in a juvenile criminal proceeding, at a pretrial hearing (where he waived his client's right to a <u>Rasmussen</u> hearing), and before an administrative tribunal. He also stipulated to a restraining order on behalf of a client not present in court. *Id.* at 825. Moreover, the attorney in *Jorissen* did not tell anyone about his suspension; *id.* at 826, whereas, here, respondent sent notices of his suspension to all his clients.

Respondent's previous serious misconduct is an aggravating factor. Mitigating factors include no harm to clients, respondent's civic and pro bono activities, and his commitment to future good ethics. Beyond respondent disputing certain allegations of misconduct, the director does not cite any evidence that respondent failed to cooperate fully with the director's investigation.

It is the opinion of this court that the appropriate sanction to be imposed on respondent is to continue his suspension to January 1, 1991. On or after that date, respondent may petition for reinstatement. Any application for reinstatement shall require respondent to comply with Rule 18, RLPR, including a requirement to take the ethics portion of the state bar examination. In addition, within 90 days of the date of this order, respondent shall pay to the director the sum of Seven Hundred Fifty and No/100 Dollars ($750.00) in costs and disbursements pursuant to Rule 24, RLPR.

IT IS SO ORDERED.