**In re Petition for DISCIPLINARY ACTION AGAINST Stephen Vincent GRIGSBY, a Minnesota Attorney, Registration No. 291973.**

**No. A11–0976.**

Supreme Court of Minnesota.

July 11, 2012.

Martin A. Cole, Director, Robin J. Crabb, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Stephen Vincent Grigsby, Fairbanks, AK, pro se.

OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility ("Director") filed a petition for disciplinary action alleging that respondent Stephen Vincent

Grigsby violated Rules 1.2(a),[1] 3.3(a)(1),[2] 4.1,[3] 8.4(c)[4] and (d),[5] and 5.5(a),[6] Minn. R. Prof. Conduct, by, without prior authorization, writing and filing an appellate brief for a former client while his privilege to practice law was suspended, signing the former client's name to the brief, and indicating that the former client was pro se. Following an evidentiary hearing, the referee concluded that Grigsby committed the violations alleged and recommended that his previous suspension be extended for a period of at least 9 months and that reinstatement, if any, be subject to the hearing required by Rule 18(d), Rules on Lawyers Professional Responsibility (RLPR). While we conclude that Grigsby has committed most of the alleged misconduct, we decline to adopt the referee's recommended discipline; rather, we order that Grigsby be suspended from the practice of law for a period of 60 days.

This disciplinary action arises out of Grigsby's representation of J.R. Before Grigsby was suspended, he was representing J.R. in a driving while under the influence case. After the district court declared a mistrial without J.R.'s consent and without considering less drastic alternatives, J.R. was retried and convicted on January 5, 2009. Grigsby filed J.R.'s notice of appeal on February 2, 2009. We suspended Grigsby from the practice of law for 60 days on April 16, 2009, for conduct unrelated to his representation of J.R. *See In re Grigsby*, 764 N.W.2d 54 (Minn.2009). J.R.'s appeal was pending on April 16, and J.R.'s brief was due to the court of appeals during Grigsby's suspension. Grigsby's suspension took effect immediately; at that point, Grigsby had not yet completed J.R.'s brief.

Pursuant to our order, and Rule 26, RLPR, Grigsby notified J.R. in an April 29, 2009, letter that he was suspended and could not continue to represent J.R. The letter stated, "[a]s a client you may either hire substitute counsel and collect your file from me otherwise I will have another lawyer handle your case for no cost." While Grigsby found other attorneys to handle all of his other "30 or so odd cases," he was unable to find an attorney to handle J.R.'s appeal.

Grigsby completed J.R.'s appellate brief, signed J.R.'s name to it, indicated that J.R. was pro se, and timely filed the brief with the court of appeals in late May 2009. Grigsby also sent a copy of the brief to J.R. along with a letter explaining why the brief indicated that J.R. was pro se. The Assistant County Attorney assigned to

1. Rule 1.2(a), Minn. R. Prof. Conduct, provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation and ... shall consult with the client as to the means by which they are to be pursued," but "[a] lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."

2. Rule 3.3(a)(1), Minn. R. Prof. Conduct, provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

3. Rule 4.1, Minn. R. Prof. Conduct, provides that "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of fact or law."

4. Rule 8.4(c), Minn. R. Prof. Conduct, provides that it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

5. Rule 8.4(d), Minn. R. Prof. Conduct, provides that it is misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

6. Rule 5.5(a), Minn. R. Prof. Conduct, provides that "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction."

J.R.'s appeal believed that Grigsby had written the brief while suspended, and informed the Director. J.R. proceeded pro se, and his conviction ultimately was reversed on double jeopardy grounds.

On May 31, 2011, over 2 years after this solitary instance of alleged misconduct, the Director filed a petition for disciplinary action against Grigsby. The petition asserts that Grigsby practiced law while suspended by writing the brief, in violation of Rule 5.5(a), Minn. R. Prof. Conduct. The petition further asserts that Grigsby violated Rules 3.3(a)(1), 4.1, and 8.4(c) and (d) by signing J.R.'s name to the brief, and Rule 1.2(a) by signing and filing the brief without prior authorization from J.R.

The Director deposed J.R. during his investigation. Questioning focused on two areas: first, whether J.R. authorized Grigsby to sign J.R.'s name to and file the brief and, second, whether J.R. was acting pro se during his appeal. As to authorization, J.R.'s testimony strongly suggested that he had impliedly authorized Grigsby to sign J.R.'s name and file the brief. J.R. indicated that he did not know much about the appeals process, but that he wanted Grigsby to do everything that was required to assure that J.R.'s appeal was heard, including filing a brief. When questioned by the Director about whether J.R. ever explicitly authorized Grigsby to sign J.R.'s name to the brief, J.R. replied, "[Grigsby] never contacted me to even ask me. Otherwise I would have told him, yes. If he had to sign my name to get [the brief] in and get it done right away, I would have said, yes, to go ahead and sign my name." J.R. did not seem to know if he was acting pro se. When asked by the Director if he knew what pro se meant, J.R. replied in the negative, but noted that he was not acting as his own attorney. But J.R. also testified that he never hired another attorney, and that he understood Grigsby's April 29, 2009, letter to mean that Grigsby was no longer his attorney. And when asked by Grigsby if he was "on [his] own" in the appeal after Grigsby was suspended, J.R. replied, "I would think so."

Grigsby also gave testimony. Grigsby admitted that he completed the brief while suspended, signed J.R.'s name to the brief, indicated that J.R. was pro se, and filed the brief for J.R. But Grigsby denied that any of his conduct violated the Rules of Professional Conduct. According to Grigsby, his conduct was justified under Rules 1.2(a) and 1.16(d).[7]

The referee issued findings of fact and conclusions of law on October 17, 2011. The referee made the following findings: Grigsby correctly notified J.R. and the court of appeals of Grigsby's suspension; J.R. did not hire another attorney to handle his appeal, but assumed that Grigsby would take care of the appeal; Grigsby completed and filed the brief while suspended; and Grigsby signed J.R.'s name to the brief without "explicit prior consent," falsely indicating that J.R. was pro se. The referee rejected Grigsby's argument that his conduct was justified under Rule 1.16(d). Even though J.R. testified that he would have told Grigsby to sign J.R.'s name to the brief if asked, the referee rejected Grigsby's argument that he had implicit authority to sign J.R.'s name under Rule 1.2(a). The referee also found that Grigsby's prior discipline, the fact that the misconduct occurred while Grigsby was suspended, that Grigsby was experienced in criminal law, and the similarity

---

**7.** Rule 1.16(d), Minn. R. Prof. Conduct, provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests."

to Grigsby's previous dishonest misconduct were aggravating factors. The fact that J.R. suffered no harm and, in fact, won his appeal, was a mitigating factor.

The referee concluded that: (1) completing and filing the brief while suspended constituted the practice of law under Minn.Stat. § 481.02 (2010), and therefore Grigsby violated Rule 5.5(a), Minn. R. Prof. Conduct; (2) signing J.R.'s name to the brief and indicating that J.R. was pro se were false statements to the court of appeals made with the intent to conceal Grigsby's participation in the appeal from the court and opposing counsel, in violation of Rules 3.3(a)(1), 4.1, and 8.4(c) and (d); and (3) signing J.R.'s name and filing the brief without authorization violated Rule 1.2(a), Minn. R. Prof. Conduct. The referee recommended that this misconduct warranted an extension of Grigsby's suspension for a minimum of 9 months and affirmatively recommended that Grigsby petition for reinstatement.[8] Grigsby appealed and ordered a transcript.

## I.

On appeal, Grigsby makes essentially three arguments to justify his conduct and avoid discipline. First, he argues that writing and filing J.R.'s appellate brief while suspended was not misconduct because under Minn. R. Prof. Conduct 1.16(d), he had a duty to protect the interests of J.R., his former client. Second, he argues that signing J.R.'s name and indicating that J.R. was pro se was not misconduct because he had J.R.'s implied authorization to do so. Third, Grigsby contends that because his conduct was justified, the referee's conclusion that he

violated several professional conduct rules was clearly erroneous. We disagree.

## A.

■ Grigsby urges us to interpret Minn. R. Prof. Conduct 1.16(d), to provide a limited defense or justification for practicing law while suspended. The referee rejected Grigsby's proposed interpretation.[9] The interpretation of the Minnesota Rules of Professional Conduct is a question of law that we review de novo. *In re Ulanowski*, 800 N.W.2d 785, 793 (Minn. 2011).

## 1.

■ Minnesota Rule of Professional Conduct 1.16(d), provides that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests." Grigsby argues that Rule 1.16(d) may sometimes "impose[ ]a minimal obligation to continue the practice of law" on suspended lawyers to the extent necessary to protect a client's interests.

After making an unsuccessful attempt to find replacement counsel, Grigsby contends that an attorney in his situation had only three options. First, Grigsby argues that he could have simply abandoned J.R., which would have violated Rule 1.16(d). Second, he could have sent J.R. the file. But Grigsby contends that, because he believed that J.R. "would have not understood his predicament [and] would have failed to submit a brief in time," sending J.R. the file close to the filing deadline would have also violated Rule 1.16(d). Third, Grigsby could have done what he

8. Grigsby has not sought reinstatement from his previous 60-day suspension.

9. The referee "found" that Rule 1.16(d), Minn. R. Prof. Conduct, did not provide a defense or justification for Grigsby's conduct.

While the referee listed this determination as a finding of fact, it is a statement of the referee's interpretation of the Minn. R. Prof. Conduct, which we review de novo. *See In re Ulanowski*, 800 N.W.2d 785, 793 (Minn.2011).

did—submit a pro se brief for J.R. Therefore, according to Grigsby, even if he practiced law while suspended, doing so was justified because any action he could have taken would have violated the Rules of Professional Conduct, and "[t]here can be no violation if there was not a better alternative."

We need not, and do not, address the merits of Grigsby's novel interpretation of the Rules of Professional Conduct because we conclude that, even if Rule 1.16(d) could offer a defense in some other circumstances, it does not excuse Grigsby's conduct here. Simply put, Grigsby had alternatives, other than writing and filing a brief while suspended from the practice of law, which would have satisfied the requirement under Rule 1.16(d) to protect J.R.'s interests. Among the alternatives not pursued by Grigsby is correspondence informing J.R. that he was unable to find substitute counsel, and urging J.R. to find other counsel; advising the court of appeals of the circumstances and, potentially, seeking an extension of the time to file a brief or requesting other relief, or contacting the Director (anonymously if Grigsby wished) for the purpose of obtaining an advisory opinion regarding his options. Grigsby is essentially asserting a false dilemma and we reject his justifications for his actions. Simply put, surreptitiously writing J.R.'s appellate brief, signing J.R.'s name to it pro se, and filing it with the court of appeals was not the *only* action Grigsby could have taken to protect J.R.'s interests.

2.

■ Having concluded that Minn. R. Prof. Conduct 1.16(d) did not provide Grigsby with a justification to practice law while suspended, we now must determine whether Grigsby violated Minn. R. Prof. Conduct 5.5(a). Rule 5.5(a) provides that "[a] lawyer shall not practice law in a

jurisdiction in violation of the regulation of the legal profession in that jurisdiction." The referee concluded that by "drafting a legal document on behalf of a client, and submitt[ing] that document in the client's appeal" while suspended, Grigsby violated this rule. We review a referee's conclusions of law for "clear error." *In re Aitken*, 787 N.W.2d 152, 158 (Minn.2010).

Grigsby argues that, even if Rule 1.16(d) does not provide him with a defense, drafting a legal document while suspended does not necessarily violate Rule 5.5(a). Grigsby contends that drafting a legal document only becomes a violation "when a suspended lawyer drafts a document along with the representation that he is qualified to practice law." The Director counters that Grigsby's actions clearly constituted the practice of law while suspended. We agree with the Director.

We have held that the preparation of legal documents does not constitute the practice of law only if the "work is of a preparatory nature ... such as legal research and investigation, [and] that ... work merges with the work of a supervising attorney." *In re Jorissen*, 391 N.W.2d 822, 825 (Minn.1986). When, however, an unlicensed person "acts in a representative capacity in protecting, enforcing, or defending the legal rights of another," that person engages in the unauthorized practice of law. *Id.* Clearly, by drafting and submitting an appellate brief for J.R. while suspended, Grigsby was "defending the legal rights of another," and thus practicing law without a license. *Id.* The referee's conclusion that Grigsby violated Minn. R. Prof. Conduct 5.5(a), was not clearly erroneous.

B.

■ Next, Grigsby urges us to conclude that he was justified in signing J.R.'s name to, and indicating that J.R. was pro se on,

the brief because he had implicit authority to do so. Therefore, Grigsby argues, the referee's conclusion that he violated Rule 1.2(a) was clearly erroneous.

Minnesota Rule of Professional Conduct 1.2(a) provides that a "lawyer may take such action on behalf of the client as is impliedly authorized" by the client. This rule clearly allows a lawyer to take any *lawful* action that is impliedly authorized. *Id.; see* Minn. R. Prof. Conduct 1.2 cmt. 1–2005. The referee found that Grigsby did not obtain J.R.'s "explicit prior consent" before drafting, signing J.R.'s name to, and submitting the brief and that this conduct violated Rule 1.2(a).[10] The Director argues that this conclusion is supported by the record and not clearly erroneous because Grigsby "exceeded his authority." Grigsby argues that he had implicit authority to do what he did. We agree with the Director that Grigsby exceeded his implicit authority by signing J.R.'s name to the brief.

J.R.'s testimony reveals that he attempted to give Grigsby implicit authority to do everything that was required to assure that his appeal was heard, including filing a brief. For example, when asked if he would have authorized Grigsby to sign J.R.'s name to a brief, J.R. replied, "yes. If he had to sign my name to get it in and get it done right away, I would have said, yes, to go ahead and sign my name."

But Grigsby's implicit authorization to "do anything" for J.R. does not end our Rule 1.2(a) analysis. Rule 1.2(a) allows an attorney to take any authorized *lawful* action in the course of representing a client. Minn. R. Prof. Conduct 1.2 cmt. 1–2005. Rule 1.2(a) does not allow an attorney to take, even implicitly authorized, *unlawful* action on a client's behalf.

Much of Grigsby's conduct was clearly unlawful. First, as we have just concluded, Grigsby unlawfully practiced law while suspended by drafting J.R.'s appellate brief. Moreover, it is difficult to envision any circumstances where it would be lawful for an attorney to sign a client's name to a court document; suffice it to say here that Grigsby presents no such circumstances and our prior decisions provide no support for the claims he advances. *See In re Riggs,* 664 N.W.2d 290, 290 (Minn. 2003) (enforcing stipulation that attorney violated Rules 8.4(c) and (d) when attorney signed client's name to an affidavit with the client's knowledge but without intent to defraud); *In re Dowdal,* 284 N.W.2d 394, 394 (Minn.1979) (reprimanding attorney for signing client's name to an affidavit and submitting the affidavit, even though the attorney had the client's express authorization to do so). Grigsby cites no authority, and we have found none, either in Minnesota or elsewhere, for the remarkable proposition that a lawyer could sign an appellate brief using the name of someone else. Simply put, J.R. could not give Grigsby authority to write and file the brief for him or to sign J.R.'s name to the brief. Thus, Grigsby exceeded his implied authority by practicing law while suspended and signing J.R.'s name to the brief, and the referee's conclusion that Grigsby violated Rule 1.2(a) was not clearly erroneous.

## C.

Finally, Grigsby contends that the referee's conclusion that he knowingly made

---

**10.** The referee's finding suggests that he interpreted Rule 1.2(a) to require an attorney to obtain a client's "explicit prior consent" before acting. Such an interpretation of Rule 1.2(a) is not correct because an attorney may take any lawful action on behalf of a client that is "impliedly authorized." Nonetheless, any interpretive error the referee made is immaterial under the facts of this case.

false statements to the court of appeals in violation of Minn. R. Prof. Conduct 3.3(a)(1), 4.1, and 8.4(c) and (d), when he "represented in the brief that J.R. was *pro se*," and when he signed J.R.'s name to the brief was clearly erroneous. Essentially, Grigsby argues that he did not make any false statements.

### 1.

▮▮ Grigsby contends that he did not violate the Rules of Professional Conduct when he indicated that J.R. was pro se because the statement was true. According to Grigsby, J.R. was pro se because Grigsby's representation had in fact been withdrawn by this court's suspension order. Grigsby argues that "[w]hen a client has been deprived of a lawyer while a case is pending and before he can retain another, he is in fact pro se [because] a client can either only be represented by a lawyer or by himself." *See* Minn.Stat. § 481.02, subd. 1. We agree.

Once Grigsby was suspended, J.R. could either represent himself pro se or hire another attorney to handle his appeal. Because J.R. did not hire another attorney, he was pro se. *See Black's Law Dictionary* 1341 (9th ed.2009) (defining "pro se" as "[o]ne who represents oneself in a court proceeding without the assistance of a lawyer"). Therefore, by writing that J.R. was pro se in his appeal, Grigsby was making a true, rather than a false, statement and the referee's conclusion that this conduct violated Rules 3.3(a)(1), 4.1, and 8.4(c) and (d) was clearly erroneous.

### 2.

▮▮ Grigsby also argues that he did not violate the Rules of Professional Conduct when he signed J.R.'s name because he did not intend to deceive J.R. or the court of appeals. We disagree. Grigsby violated the Rules when he signed J.R.'s name to the brief because a lawyer may not sign another person's name to a court docu-

ment, regardless of intent. *See Dowdal,* 284 N.W.2d at 394. Thus, the referee did not clearly err in concluding that Grigsby violated Rules 3.3(a)(1), and 8.4(c) and (d) when he signed J.R.'s name to the brief.

### II.

▮▮ Because Grigsby violated Minn. R. Prof. Conduct 1.2(a), 3.3(a)(1), 5.5(a), and 8.4(c) and (d), we must decide on appropriate discipline. The Director urges us to adopt the referee's recommendation of an indefinite extension of Grigsby's suspension for a minimum of 9 months, and a required reinstatement hearing pursuant to Rule 18, RLPR. We conclude that the referee's recommended discipline is disproportionate to Grigsby's misconduct, and instead order that Grigsby be suspended for 60 days.

▮▮▮ Discipline for professional misconduct is "not to punish the attorney." *In re Ulanowski,* 800 N.W.2d 785, 799 (Minn.2011). Rather, its purpose is "to protect the public, protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau,* 787 N.W.2d 168, 173 (Minn.2010). In determining the appropriate discipline, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *Ulanowski,* 800 N.W.2d at 799 (citation omitted). We also give weight to any aggravating factors and mitigating circumstances in determining the appropriate discipline. *Id.* While "prior decisions guide and aid us in enforcing consistent discipline," *Rebeau,* 787 N.W.2d at 174, we ultimately determine sanctions "based on the unique facts of each case." *Ulanowski,* 800 N.W.2d at 799.

*Nature of the Misconduct*

■ Grigsby practiced law while suspended. Practicing law in deliberate violation of a suspension order not only "constitute[s] unauthorized practice of law 'it also constitutes contempt of court.'" *In re Hunter*, 473 N.W.2d 866, 869 (Minn.1991) (quoting *In re Jorissen*, 391 N.W.2d 822, 826 (Minn.1986)). But we have disciplined this misconduct in a variety of ways, taking into account what, if any, other misconduct the attorney committed. In *Hunter*, for example, we disbarred an attorney for practicing while suspended in addition to misappropriating client funds, forging a client's signature for personal gain, and failing to cooperate with the Director's investigation. 473 N.W.2d at 686–69. But we have only disbarred attorneys for practicing without a license in rare, extreme, cases. *See Jorissen*, 391 N.W.2d at 826 (disbarring attorney for repeatedly engaging in the practice of law while suspended); *see also In re Ray*, 610 N.W.2d 342, 346–47 (Minn.2000) (disbarring attorney who continuously practiced law for several years while suspended). Most often, we have extended the suspension of lawyers for varying lengths of time. *See, e.g., In re Neill*, 486 N.W.2d 150, 150–51 (Minn. 1992) (3–year extension for practicing while suspended, failing to disclose client conflict of interest, client neglect, and failure to cooperate with the Director's investigation). Grigsby's practice of law while suspended was limited to a single instance and did not result in an injury to a client. Thus, Grigsby's misconduct, while serious, is less serious than that in cases where we have ordered harsh discipline.

■ Grigsby also exceeded his authority by making a false statement to the court of appeals when he signed J.R.'s name to the brief. Although generally, making false statements is serious misconduct warranting severe discipline, *In re*

*Houge*, 764 N.W.2d 328 (Minn.2009), we have not generally imposed more severe discipline on lawyers who sign a client's name to a court document with the client's consent. *See, e.g., In re Riggs*, 664 N.W.2d 290, 290 (Minn.2003) (ordering 30–day suspension when attorney signed client's name to an affidavit with the client's knowledge and without intent to defraud); *Dowdal*, 284 N.W.2d at 394 (reprimanding attorney for signing client's name to an affidavit and submitting the affidavit, even though the attorney had the client's express authorization to do so).

*Cumulative Weight of the Misconduct*

■ We have recognized that "the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004). Here, Grigsby violated several rules, but the violations all resulted from an attempt to act, on one occasion, in the best interests of the one client (out of approximately 30) for whom Grigsby could not find substitute counsel. Because we distinguish between multiple acts of misconduct and "brief lapse[s] in judgment" or "single, isolated incident[s]," *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn.2011) (citation omitted), the fact that Grigsby's single instance of misconduct violated multiple rules does not warrant enhanced discipline.

*Harm to the Public and the Legal Profession*

We have held that conduct involving dishonesty is "misconduct of the highest order" because "[h]onesty and integrity are chief among the virtues the public has a right to expect of lawyers." *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn.1992). It is undisputed, and the referee so found,

that Grigsby's conduct did not injure or harm his former client. On the other hand, his actions, for example, in practicing law while under suspension, and falsely signing another's name to a court document, harm the legal profession and do not represent the virtues that the public has the right to expect of lawyers. That said, the isolated, single incident of misconduct, the absence of any personal gain or motive on the part of Grigsby related to his misconduct, and the lack of any direct damage to the public all militate against enhanced sanctions.

*Aggravating and Mitigating Factors*

■ The referee found that Grigsby's disciplinary history, the fact that Grigsby committed misconduct while suspended, the similarity of Grigsby's misconduct to his past misconduct, and Grigsby's experience in criminal law were aggravating factors. The referee found that the fact that J.R. was not harmed, and in fact was benefited by Grigsby's actions, as a mitigating factor. We review a referee's findings of aggravating and mitigating factors for clear error. *In re Albrecht,* 779 N.W.2d 530, 535 (Minn.2010).

■ We conclude that the referee clearly erred in finding that Grigsby's misconduct is similar to his previous misconduct. Grigsby's previous misconduct principally involved the failure to file taxes. *In re Grigsby,* 764 N.W.2d 54, 62–63 (Minn.2009). Here, Grigsby practiced law while suspended and signed his former client's name on a court document—this misconduct is simply not analogous to his previous misconduct. We conclude, however, that the other aggravating and mitigating factors the referee found are not clearly erroneous.

■ The referee concluded, and the Director agrees, that Grigsby should be required to undergo a reinstatement hear-ing pursuant to Rule 18, RLPR. This recommendation is not without merit. Among other concerns, Grigsby persists in denying that any of his conduct violated our professional conduct rules and it is particularly troubling that neither his filings with our court nor his oral argument even hint at the possibility that he violated our rules of professional conduct. Grigsby's lack of insight makes the issue of whether to lengthen the period of additional suspension such that a reinstatement hearing is automatically required under Rule 18, RLPR, or to simply require an affidavit before Grigsby is reinstated to the practice of law, a much closer call.

But in the end, we conclude that a reinstatement hearing should not be required here. Notwithstanding his lack of insight, the misconduct here is a single event with no deleterious effect on the client.

Finally, it is also worth noting the procedural irregularities in this discipline matter. Grigsby was suspended for 60 days on April 16, 2009. Grigsby's single instance of misconduct resulting in this disciplinary proceeding took place sometime during April and May 2009, and the Assistant County Attorney informed the Director of it on June 3, 2009. The facts of this case are simple and undisputed, Grigsby's violations are obvious, and Grigsby complied with the Director's investigation. The Director did not file a petition for disciplinary action until May 31, 2011, 727 days after notice of the misconduct. Because Grigsby, understandably, did not seek readmission while under investigation for practicing law while suspended, *see* Rule 18(f), RLPR, he has effectively been suspended from the practice of law since April 16, 2009, or for over 3 years. The purpose of any disciplinary proceeding, as noted earlier, is to protect the public; the delay here tends to weaken the Director's argument that protection of the public re-

quires a reinstatement hearing and we decline to do so notwithstanding the legitimate concerns discussed earlier.

Considering the totality of the circumstances in this case, we order that:

1. Respondent Stephen Vincent Grigsby is suspended from the practice of law for a period of 60 days, effective immediately; it is unnecessary to delay imposition of the suspension because Grigsby has not sought reinstatement following his prior suspension. Respondent shall be conditionally reinstated following the end of the suspension period provided that, at least 15 days before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that respondent is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has satisfactorily complied with all other conditions here imposed.

2. Pursuant to Rule 18(e)(3), RLPR, within 1 year of the date of filing of this opinion, respondent shall file with the court and serve upon the Director proof of his successful completion of the professional responsibility portion of the state bar examination; failure to do so shall result in respondent's re-suspension.

3. Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

So ordered.

DIETZEN, Justice (concurring in part, dissenting in part).

I agree with the court's decision to affirm the referee's conclusions that Stephen Grigsby violated various Rules of Professional Conduct for writing and filing an appellate brief for a former client while his privilege to practice law was suspended, and signing the former client's name to the brief. But I respectfully disagree with the court's decision to reject the referee's recommendation that Grigsby be required to undergo a reinstatement hearing pursuant to Rule 18, Rules on Lawyers Professional Responsibility (RLPR), as a condition of his reinstatement to the practice of law. Therefore, I respectfully dissent regarding the discipline imposed.

The purpose of lawyer discipline for professional misconduct is not to punish the attorney. *In re Rebeau*, 787 N.W.2d 168, 173 (Minn.2010). Instead, it is "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." A lawyer suspended for 90 days or less is not required to undergo a reinstatement hearing pursuant to Rule 18, RLPR, unless ordered to do so by the court. Rule 18(f), RLPR. A Rule 18 hearing requires that a suspended lawyer "establish by clear and convincing evidence that he or she has undergone such a moral change as now to render [the lawyer] a fit person to enjoy the public confidence and trust once forfeited." *In re Dedefo*, 781 N.W.2d 1, 8 (Minn.2010) (citations omitted) (internal quotation marks omitted). Evidence of moral change comes from a record of appropriate conduct by the lawyer, as well as the lawyer's state of mind and values. *Id.* "Reinstatement requires stronger evidence of good moral character and trustworthiness than an original admission to practice." *Id.* Among other factors, the hearing requires consideration of the seriousness of the original misconduct and the suspended lawyer's recognition of the wrongfulness of his conduct. *Id.*

The referee recommended that a reinstatement hearing be required as a condition of Grigsby's reinstatement. Generally, we give some deference to the discipline recommended by the referee. *Rebeau*, 787 N.W.2d at 173. The referee's recom-

mendation that a hearing be required is supported by the record. Grigsby's conduct was clearly unlawful, and his violations are obvious and serious. Specifically, Grigsby knowingly made a false statement to the court of appeals by signing a client's name to a brief, and Grigsby prepared and filed the brief in clear violation of his suspension from the practice of law. More importantly, there is no evidence in the record that Grigsby has recognized the wrongfulness of his conduct. Instead, Grigsby continues to insist that his conduct was lawful and permissible, and refuses to recognize that he has violated the law or the Rules of Professional Conduct.

The majority argues that Grigsby has effectively been suspended from the practice of law for 3 years, and the "effective" suspension should be considered. I agree. But the court must also consider protecting the public and the judicial system. The passage of 3 years is overshadowed by Grigsby's complete failure to comprehend the gravity and wrongfulness of the conduct that led to these proceedings. Consequently, the mere passage of an additional 60 days will do nothing to adequately protect the public and judicial system from the recurrence of such conduct. Although the misconduct here stems from a single event that had no deleterious effect on the client, this case marks the second time Grigsby has committed misconduct warranting suspension and involves a deliberate violation of the earlier suspension.

I conclude that a reinstatement hearing as a condition of reinstatement is necessary to protect the public, to protect the judicial system, and to deter future misconduct by Grigsby, as well as other attorneys. The referee's recommendation is amply supported by the record. Therefore, I would require that Grigsby show that he is fit to regain the trust of the public and this court by undergoing a Rule 18, RLPR, reinstatement hearing as a condition of his reinstatement to the practice of law following his 60–day suspension.

Therefore, I concur in part and dissent in part.

GILDEA, Chief Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Dietzen.

STRAS, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Dietzen.