In re Petition for DISCIPLINARY ACTION AGAINST Hugh D. JAEGER, a Minnesota Attorney, Registration No. 49529.

No. A12–1184.

Supreme Court of Minnesota.

July 31, 2013.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Hugh D. Jaeger, Wayzata, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Hugh D. Jaeger. The petition alleges that Jaeger engaged in the unauthorized practice of law while suspended for professional misconduct, failed to provide the required proof that he notified his clients of his suspension, and failed to cooperate with several disciplinary investigations in violation of Rules 3.4(c), 5.5(a) and (b), 8.1(b), and 8.4(d) of the Minnesota Rules of Professional Conduct, as well as Rules 25 and 26 of the Rules on Lawyers Professional Responsibility (RLPR). Because Jaeger failed to respond to the petition, we deemed the allegations in the petition admitted pursuant to Rule 13(b), RLPR. The Director recommends that Jaeger be disbarred. We agree.

Jaeger was admitted to practice patent law before the United States Patent and Trademark Office (USPTO) in 1974 and was admitted to practice law in Minnesota in April 1977. On August 11, 2011, we

suspended Jaeger from the practice of law for 120 days for neglecting client matters, signing documents without consent, failing to return client files, and failing to cooperate with a disciplinary investigation. *In re Jaeger*, 801 N.W.2d 185, 185–86 (Minn. 2011). Our order prohibited Jaeger from practicing law in Minnesota or any other jurisdiction, and barred him from acting as an attorney based on authority granted by the USPTO. *Id.* at 186. The order also required Jaeger to comply with the provisions of Rule 26, RLPR (requiring an attorney to give notice of suspension to clients, opposing counsel, and tribunals). *In re Jaeger*, 801 N.W.2d at 186.

Despite the order suspending him from the practice of law, Jaeger continued to represent clients and hold himself out as an attorney authorized to practice law. Specifically, between September 2011 and March 2012, Jaeger represented clients before the USPTO in nine trademark and patent matters. He filed trademark applications, an amendment to an application, and other documents on behalf of his clients and identified himself as the attorney for each client and the person to whom correspondence should be sent. Jaeger also continued to use the same attorney letterhead that he used before his suspension.

Additionally, Jaeger failed to provide the Director with the required proof of notice to his clients of his suspension. Although Jaeger provided the Director with an affidavit stating that he notified his clients of his suspension, he did not provide copies of the notice letters or proof of mailing by certified mail as required by Rule 26(e), RLPR.

Jaeger also failed to respond to the Director's repeated requests for information related to several disciplinary investigations. In particular, the Director provided Jaeger with notices of investigation into several matters, including: (1) his efforts to hire a law clerk while suspended; (2) his unauthorized practice of law; (3) a complaint filed against him by the USPTO; and (4) a complaint filed against him by an individual. The notices requested that Jaeger provide certain written information in response. But Jaeger failed to provide the information despite repeated requests from the Director and did not meaningfully respond to or communicate with the Director about the investigations.

The Director filed a petition for disciplinary action against Jaeger, which was served on Jaeger on June 28, 2012. Jaeger failed to respond to the petition. Therefore, on September 18, 2012, we ordered that the allegations against Jaeger in the petition be deemed admitted and that the parties submit written proposals on the proper discipline. The Director filed a memorandum of law requesting that Jaeger be disbarred. Jaeger did not file a response; instead, he sent several faxes asking for additional time. We granted Jaeger's first request for an extension of time, but denied the remaining requests because they did not comply with Minn. R. Civ.App. P. 125.01–.04. We notified the parties of the date for oral argument, but Jaeger did not appear.

## I.

Despite notice and an opportunity to respond to the petition for disciplinary action, Jaeger did not respond to or contest the allegations in the petition within the requisite time period. Consequently, the allegations in the petition are deemed admitted. *See* Rule 13(b), RLPR (providing that if respondent fails to answer within the time provided, "the allegations shall be deemed admitted"). We therefore accept the Director's allegations against Jaeger as true, and the sole issue before us is the appropriate discipline to be imposed. *See*

*In re Swensen,* 743 N.W.2d 243, 247 (Minn. 2007), *modified on reh'g* (Minn. Jan. 2, 2008).

■■■■ The purpose of disciplinary sanctions is not to punish the attorney, but to protect the public, safeguard the judicial system, and deter future misconduct. *In re Nathanson,* 812 N.W.2d 70, 78 (Minn. 2012). We consider four factors to determine the appropriate discipline: (1) the nature of the misconduct; (2) the cumulative weight of the violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Lundeen,* 811 N.W.2d 602, 608 (Minn.2012). We will also consider any aggravating and mitigating circumstances. *Nathanson,* 812 N.W.2d at 79. Although discipline is ultimately determined "based on the unique facts and circumstances" of the case, we will look to previous decisions for guidance "in enforcing consistent discipline." *In re Rebeau,* 787 N.W.2d 168, 174 (Minn.2010).

### A.

The principal misconduct alleged in this case is the unauthorized practice of law after suspension. We have disciplined attorneys for the unauthorized practice of law "in a variety of ways, taking into account what, if any, other misconduct the attorney committed." *In re Grigsby,* 815 N.W.2d 836, 845 (Minn.2012). Attorneys who have practiced law while suspended for noncompliance with registration fees or CLE requirements have typically received suspensions or reprimands.[1] *See In re Ray,* 452 N.W.2d 689, 694 (Minn.1990) (citing cases). But "[w]e have applied harsher discipline in a case where, as here, an attorney suspended for disciplinary violations continued to practice law." *Id.*

In *In re Jorissen,* we disbarred an attorney with a lengthy disciplinary history who practiced law while suspended for professional misconduct. 391 N.W.2d 822, 823–24 (Minn.1986). During his suspension, Jorissen continued to appear on behalf of clients in court and act on their behalf. *Id.* He failed to correct the mistaken belief of opposing counsel and the tribunals that he was an attorney authorized to practice law. *Id.* at 826. We focused on the dishonest nature of Jorissen's conduct, observing:

> [Jorissen] clearly led others to believe he was an attorney representing a client. Such conduct is dishonest, fraudulent, and deceitful, it clearly reflects adversely on respondent's ability to practice law, and can no longer be tolerated. As we have previously observed, deliberate deception of the courts is offensive in that it not only obstructs the administration of justice but also subverts that loyalty to the truth without which one cannot be a lawyer in the real sense of the word.

*Id.* (alteration omitted) (internal quotation marks omitted). We also recognized that Jorissen's actions constituted not only the unauthorized practice of law, but also contempt of court, and that "[d]eliberate viola-

---

1. *See, e.g., In re Fagre–Stroetz,* 710 N.W.2d 783, 785–87 (Minn.2006) (imposing a one-year suspension for practicing law while suspended for failure to pay fees, combined with neglecting clients, failing to communicate with a client, and failing to cooperate with the investigation); *In re DuFresne,* 640 N.W.2d 337, 337–38 (Minn.2002) (order) (imposing a public reprimand and probation for practicing law while suspended for failure to pay fees, combined with neglecting multiple client matters and making misrepresentations to clients); *In re Beman,* 451 N.W.2d 647, 647 (Minn.1990) (order) (imposing a three-month suspension for practicing law while on restricted status for failure to meet CLE requirements); *In re Jensen,* 418 N.W.2d 721, 721–22 (Minn.1988) (imposing a one-year suspension for practicing law while suspended for failure to pay fees, combined with neglecting two client matters, and failing to cooperate with the disciplinary investigation).

tions of [this] court's orders simply cannot be condoned." *Id.* We disbarred Jorissen based on the strong showing that he was unfit to practice law. *Id.*

We confronted a similar issue in a series of cases involving attorney Harry Ray. Initially, we suspended Ray for three years for misusing client funds, commingling funds, and failing to keep adequate records. *In re Ray (Ray I )*, 368 N.W.2d 924, 927 (Minn.1985). During his suspension, Ray continued to practice law by negotiating settlements on behalf of two clients. *In re Ray (Ray II )*, 452 N.W.2d 689, 692–93 (Minn.1990). We rejected the referee's recommendation of disbarment, reasoning that Ray's clients were on notice of his suspension, and that his conduct was not as blatant as the improper conduct in *Jorissen* because Ray did not make court appearances while suspended. *Id.* at 694. Although Ray's previous discipline was an aggravating factor, we relied on several mitigating factors to impose discipline less severe than disbarment, including the lack of harm to clients, Ray's civic and pro bono activities, and his commitment to future ethical behavior. *Id.* We also noted that there was no evidence that Ray failed to cooperate with the Director's investigation. *Id.* Thus, we continued Ray's suspension for an additional nine and one-half months. *Id.*

But Ray did not petition for reinstatement, and he continued to practice law by preparing a trust agreement, sending correspondence in a personal injury lawsuit, appearing in paternity action hearings, and negotiating with opposing counsel. *In re Ray (Ray III )*, 610 N.W.2d 342, 344 (Minn.2000). We disbarred Ray, reasoning that Ray had violated a suspension order for the second time and that, rather than reforming his conduct, he repeated it. *Id.* at 347. We also noted that Ray's conduct was aggravated by his previous discipline and his failure to cooperate with the Director's requests for information. *Id.*

We also addressed the unauthorized practice of law in *In re Grigsby*, 815 N.W.2d 836 (Minn.2012). We initially suspended Grigsby for 60 days for making misrepresentations, failing to file income taxes and maintain proper records, failing to use written retainer agreements, and failing to cooperate with a disciplinary investigation.[2] During his suspension, Grigsby had a brief due to the court of appeals on one of his preexisting criminal matters. *Id.* at 839. Grigsby notified his client of the suspension and unsuccessfully tried to find another attorney to handle the appeal. *Id.* He then finished the brief himself and signed the client's name to it as pro se, ultimately resulting in reversal of his client's conviction. *Id.* at 839–40. We found that Grigsby engaged in the unauthorized practice of law and made a false statement to the appellate court. *Id.* at 842–44. But we noted that, in addition to other extenuating circumstances, Grigsby committed only a single instance of misconduct stemming from the desire to act in the best interests of a client, and did not injure that client. *Id.* at 845–46. Although Grigsby's actions were serious, we concluded that they were less serious than in cases in which we had ordered harsh discipline, and therefore imposed a 60-day suspension. *Id.* at 845, 847.

B.

■ Having examined our previous decisions for guidance, we now apply our four-factor test to the facts of this case.

■ We first examine the nature of the misconduct. Our order suspending

---

**2.** *In re Grigsby,* 764 N.W.2d 54, 56 (Minn. 2009).

Jaeger expressly prohibited him from acting as an attorney in matters before the USPTO after August 31, 2011. But Jaeger deliberately disregarded our order by continuing to represent clients before the USPTO. His filings identified him as the attorney for the client and the person to whom correspondence should be sent. An attorney who continues to practice after a suspension order engages not only in the unauthorized practice of law, but also commits contempt of court. *Grigsby*, 815 N.W.2d at 845. Moreover, making appearances or signing documents as an attorney while suspended constitute misrepresentations, *see Jorissen*, 391 N.W.2d at 826, and "[s]evere discipline is warranted where a lawyer's conduct is dishonest and lacks integrity," *In re Houge*, 764 N.W.2d 328, 339 (Minn.2009). Additionally, Jaeger failed to cooperate with the disciplinary investigation and provide the required proof that he notified his clients of his suspension. Persistent failure to cooperate with the Director's investigation is additional "serious misconduct that constitutes separate grounds for discipline" and "increase[s] the severity of the disciplinary sanction when connected with other professional misconduct." *In re Rhodes*, 740 N.W.2d 574, 579–80 (Minn.2007). Failure to comply with all the requirements of Rule 26, RLPR, is also grounds for discipline. *In re Swokowski*, 796 N.W.2d 317, 327 (Minn.2011).

 We next consider the cumulative weight of the misconduct. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004). In analyzing this factor, we distinguish "a single, isolated incident" or "brief lapse of judgment" from multiple instances of misconduct occurring over a substantial amount of time. *In re Wentzel*, 711 N.W.2d 516, 521 (Minn.2006). Here, Jaeger's misconduct is not an isolated incident or a brief lapse of judgment. Jaeger acted in a representative capacity for clients in nine separate USPTO matters over approximately a six-month period, failed to file the required proof that he notified clients of his suspension, and was uncooperative with four disciplinary investigations over several months. This case is distinguishable, at least in part, from *Grigsby* and *Ray II* in that the only misconduct in those cases arose from the unauthorized practice of law on one or two client matters and there was no allegation that the attorney had failed to comply with notice requirements or cooperate with the disciplinary investigation. *See Grigsby*, 815 N.W.2d at 845–46; *Ray II*, 452 N.W.2d at 693–94.

 The third and fourth factors are the harm to the public and the legal profession caused by Jaeger's misconduct. In analyzing these factors, we consider " 'the number of clients harmed [and] the extent of the clients' injuries.' " *In re Coleman*, 793 N.W.2d 296, 308 (Minn.2011) (alteration in original) (quoting *In re Randall*, 562 N.W.2d 679, 683 (Minn.1997)). Although there is no allegation that any clients were harmed as a result of Jaeger's actions, we have stated that practicing law after suspension and falsely subscribing to legal documents "harm[s] the legal profession and do[es] not represent the virtues that the public has the right to expect of lawyers." *Grigsby*, 815 N.W.2d at 846. Jaeger has ignored the authority and directives of this court, and disregarded the Rules on Lawyer's Professional Responsibility and the Director's office. Such conduct undermines respect for the judicial system, especially when the conduct comes from an attorney, who is " 'responsible for the orderly administration of justice in this

state.'" *Jorissen,* 391 N.W.2d at 826 (quoting *In re Daly,* 284 Minn. 567, 571, 171 N.W.2d 818, 823 (1969)); *accord In re Ulanowski,* 800 N.W.2d 785, 801 (Minn. 2011) ("Failing to follow court rules harms public confidence in the legal system.").

Finally, we weigh any mitigating or aggravating factors. We consider Jaeger's disciplinary history to be an aggravating factor. When an attorney has been disciplined, we expect "'a renewed commitment to comprehensive ethical and professional behavior.'" *Rhodes,* 740 N.W.2d at 580 (quoting *In re Weems,* 540 N.W.2d 305, 309 (Minn.1995)). Unlike *Grigsby* or *Ray II,* there are no mitigating factors.

In sum, Jaeger committed contempt of court by practicing law after a suspension order, and he engaged in false and dishonest conduct by identifying himself as an attorney authorized to practice law despite being under suspension. He also disregarded his obligation to provide the required proof that he notified his clients of his suspension and to cooperate with the Director's disciplinary investigation. His conduct was serious and by its very nature harmed the legal profession. The circumstances are aggravated by Jaeger's previous misconduct and disciplinary history. We conclude, therefore, that the appropriate disciplinary sanction is that Jaeger be disbarred.

We order that:

1. Respondent Hugh D. Jaeger is disbarred from the practice of law in the State of Minnesota, effective upon the date of the filing of this opinion.

2. Respondent shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR, and shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals).

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

